[No. 9610. Department One. — August 27, 1885.]

MILLICENT R. MAULDIN, RESPONDENT, v. FRED-ERICK COX ET AL., APPELLANTS.

MARRIED WOMAN—HOMESTEAD—ACTION TO RECOVER POSSESSION—ADVERSE POSSESSION—STATUTE OF LIMITATIONS.—A married woman may maintain an action in her own name without joining her husband to recover possession of the homestead property; and as to such property, the Statute of Limitations will run against her in favor of an adverse possessor.

ID.— HOMESTEAD CANNOT BE HELD ADVERSELY BY EITHER HUSBAND OR WIFE.— During coverture, and while the husband remains the head of the family, neither party to the marital relation can hold the homestead adversely to the other.

ID. — LEASE OF HOMESTEAD BY HUSBAND — TENANT CANNOT HOLD ADVERSELY TO WIFE.—A tenant under a lease of the homestead executed by the husband without the concurrence of the wife is estopped during the existence of the term from asserting an adverse possession against either the husband or the wife.

ID.—POSSESSION WHEN ADVERSE.—Adverse possession such as will set the Statute of Limitations in motion must be open and notorious as well as continuous, and of such a character as to operate as notice to the owner that possession is held under a claim of right, and to establish an ouster of the owner.

ID.—OWNER MUST HAVE NOTICE OF ADVERSE CLAIM. — The owner has a right to be informed of the claim set up against him, either by acts or words, before the statute will run; and if the acts of the party in possession are of such a character as reasonably to indicate to the owner that the holding is not adverse, but in subordination to the title, the statute will not run.

ID.—EVIDENCE—ENTRY UNDER LEASE.—On a review of the evidence, *held*, that the acts of the defendants, subsequent to their entry into the homestead under a lease from the husband, were not sufficient to indicate to the wife that their holding was adverse.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Hart & White*, for Appellants.

*Grove L. Johnson*, and *Thornton & Merzbach*, for Respondent.

SEARLS, C.—Action of ejectment to recover a tract of land in Sacramento County. The cause was tried before a jury, verdict and judgment for plaintiff. Defendants moved for a new trial which was denied, and the cause comes upon appeal from final judgment and order overruling motion for new trial.

The facts necessary to a determination of the questions involved are as follows:—

In 1852 plaintiff, then a married woman and the wife of B. F. Mauldin, settled with her husband upon the land in question, where they continued to reside with their family until 1867. On the 31st day of August, 1860, a declaration of homestead in due form was executed by the plaintiff and her husband jointly, covering the land, and which declaration duly acknowledged, was recorded in the office of the county recorder of Sacramento County, October 15, 1860. On the 10th day of June, 1869, a patent from the State of California was issued to B. F. Mauldin, the plaintiff's husband. Patent recorded August 18, 1871. In 1867 plaintiff and her husband removed from the said premises, and took up their residence in the city of Sacramento, where they continued to reside until the 10th day of June, 1882, when B. F. Mauldin died. The sons of plaintiff and her husband remained upon the land about one year after their parents removed therefrom and then left it, since which time none of the family have occupied the land or any part thereof.

On the 27th day of September, 1871, B. F. Mauldin executed a lease of the premises to defendants for a term of two years from February 8, 1872, rent reserved $400 for the term. The

lease was duly acknowledged and recorded June 11, 1872. Before the expiration of the term, and on the 11th day of June, 1872, said B. F. Mauldin executed and delivered to defendants a second lease of the same premises for a term of ten years from January 1, 1874, rent reserved $900 for term, lease acknowledged and recorded June 11, 1872. On the 25th day of October, 1876, said B. F. Mauldin executed to defendants a deed of conveyance of all the land in question, which deed was duly acknowledged and delivered by the grantor, but never recorded. Nominal consideration, $2,500. The real consideration as stated by defendant Clark was $1,500, made up as nearly as we can determine from his testimony as follows:—

Rent reserved on ten years' lease.............................. $900
Interest............................................................. 300
Cash paid at execution of deed................................. 200

    Total .......................................................$1,500

On the 22d day of January, 1880, said B. F. Mauldin executed and delivered to defendants a third lease of the same premises for a term of ten years from date, rent reserved $1,000 for term. The lease was signed and acknowledged by defendants also, and duly recorded at request of defendent Clark, January 31, 1880. No consideration was actually paid therefor. The plaintiff herein was not a party to either or any of the leases, or to the deed of conveyance, and had no knowlege of the execution or existence of said deed until after the death of her husband in 1882.

Defendants entered into possession under their first lease, and have ever since retained such possession, using the land for grazing and other purposes, of which possession by defendants plaintiff was cognizant.

This action was brought August 10, 1883. The *locus in quo*, having been by the acts of plaintiff and her deceased husband dedicated as a homestead, and plaintiff not having joined in the leases or deed thereof as provided for the conveyance of a homestead, it is not contended that she has lost her right thereto by any direct and affirmative act of her own.

Defendants have pleaded the Statute of Limitations, and set up an adverse possession of more than five years next before

suit brought, under which they claim the right of plaintiff to recover is barred.

It is provided by section 370 of the Code of Civil Procedure that "when a married woman is a party, her husband must be joined with her, except when the action concerns her separate property, or her right or claim to the homestead property, she may sue alone."

The action in this case clearly related to her right and claim to the homestead property; consequently the husband was not a necessary party, and plaintiff could at any time have maintained an action in reference thereto without joining her husband as a party plaintiff.

As to this property there was no existing disability by reason of coverture; hence it follows that the Statute of Limitations may be successfully invoked against plaintiff, provided the facts establish an adverse possession in defendants as against her. (*Kapp* v. *Griffith*, 42 Cal. 408; *Wilson* v. *Wilson*, 36 Cal. 447.) We are therefore led to an inquiry as to the sufficiency of the facts to constitute adverse possession in defendants against this plaintiff. Defendants entered into possession of the demanded property under lease from B. F. Mauldin of October 4, 1871, and continued as his tenants under that and the subsequent lease of ten years, dated June 11, 1872, which took effect January, 1874, until the execution and delivery by Mauldin of the deed of conveyance dated October 25, 1876; as such tenants they were estopped from denying the title of their landlord during that period.

The fact that these leases were liable at any time to be avoided by the wife of Mauldin for want of capacity in her husband to make them upon the homestead does not alter the rule. The tenant is estopped, during his term, from denying the title of his landlord, not because the title is good, but because by accepting a lease and entering under it he has acknowledged the title to be in his lessor, and is precluded from showing facts inconsistent with such acknowledgment.

They were also estopped during the same term from claiming the homestead adversely to the wife of Mauldin, the plaintiff herein. It was held in *Frink* v. *Alsip*, 49 Cal. 102, that where the husband rents land from the owner and moves on to it with

his family in subordination to the owner's title, the wife cannot, during coverture, claim the premises adversely to the owner so as to set the Statute of Limitations in motion.

In *First National Bank of S. B.* v. *de la Guerra*, 61 Cal. 109, it was held that the wife could not claim during coverture, adversely to the husband or to those holding under him.

We think the converse of the proposition is also true, and that during coverture and while he remains the head of the family the husband cannot claim the homestead adversely to the wife. As the head of the family he may select the place of residence. He may choose any reasonable place or mode of living, and the wife must conform thereto. (Civ. Code, § 156.)

He may remove his family from the homestead at will, subject only to the selection of a reasonable place of residence. He may manage and control the common property, and over the homestead may with propriety exercise acts of ownership, which in another would be evidence of an adverse holding, but which in the husband indicate the assertion of the mutual rights of the parties to the marital relation.

Section 370 of the Code of Civil Procedure gives to a married woman a right to sue alone, when the action is against her husband, or when her separate property or her right or claim to the homestead is concerned. No question is made as to her right to sue her husband where her right to the homestead is invaded. The remedy is given where her right is invaded, whether by the husband or a stranger. The question under discussion, however, is not has she a remedy? but may her right be invaded by an adverse holding on the part of the husband so as to render such remedy necessary?

It would seem more in harmony with our conception of the marital relation to say that while the husband remains the head of the family, that as to the homestead his acts of possession and control will be taken as evidence of joint ownership with the wife, and that no presumption of an adverse holding can be indulged or allowed. If he may hold adversely to his wife, her right to the homestead can be determined without her consent and in a manner different from that contemplated by the Code. Her right to maintain an action against him, upon his claiming adversely, will result in gauging her title, not by the certain

provisions of the Code, but by the more uncertain oral testimony of witnesses. The acts of the husband in controlling the property, in themselves innocent and proper, will be liable in after years to be tortured into evidence of an adverse holding, where none was originally designed. All necessity for vigilance between husband and wife in guarding their property rights, should be, as far as may be, avoided. Again, if the husband can hold the homestead adversely to the wife, then she may maintain ejectment for its recovery, but when restored to possession her husband may at once rightfully remove her from the premises, or if his adverse possession shall have ripened into a title, which enables him to prevail in an action, he must continue to keep her out of possession, or she may again file a declaration of homestead on the same property, and start anew on the circuit of strife and litigation.

For these and other reasons we conclude that during coverture, and while the husband remains the head of the family, neither party to the marital relation can hold the homestead adversely to the other.

There is nothing in the record to show that B. F. Mauldin ever claimed the homestead adversely to plaintiff, and as defendants are estopped from claiming adversely against the former while holding under the lease, so they cannot claim during the same period against plaintiff, who was a joint owner with her husband of the title and property, out of which their estate was carved, and into the possession of which they entered.

*Second* — It is claimed by defendants that whatever their position as to plaintiff may have been prior to the deed from Mauldin of October 25, 1876, since the execution and delivery of that deed they have been in the adverse possession of the property, and as more than five years had elapsed between the delivery of the deed and suit brought, plaintiff's right is forever barred.

An essential element of the adverse possession which will set the Statute of Limitations in motion is, that it be open and notorious, as well as continuous; it must be of such a character as to operate as a notice to the holder of the true title that possession is held under a claim of right. The acts of the possessor should indicate clearly that he holds, not for the true owner or in subordination to his title, but for himself and in opposition

to such owner. The acts should be such as, when proven or admitted, will establish an *ouster* of the owner. He must be entitled to maintain an action before the Statute of Limitations will run against him.

He has a right also to be reasonably informed of the claim set up against him, either by acts or words before the statute will run, and if the acts of the party in possession are of such a character as reasonably to indicate to the owner that the holding is not adverse, but in subordination to the title, the statute will not run.

In the present case the defendants were in poseession as tenants under leases of record, and which would not expire until January 1, 1884.

In 1880 another lease for ten years from date by Mauldin to defendants, executed and acknowledged by all the parties thereto, was placed on record.

Plaintiff knew defendants were in possession of the premises. This was sufficient to put her upon inquiry; such inquiry, if pursued, showed that they went into possession as tenants of her husband, and in subordination to the title held by him jointly with herself.

We must presume her to have known that under section 326 of the Code of Civil Procedure the possession of the tenant is deemed the possession of the landlord, not only during the existence of the lease, but for five years after the termination of the tenancy. Of the absolute deed which her husband made to defendants and which was never recorded, she knew nothing. Indeed, its existence seems to have been studiously concealed from her.

To plaintiff then, the possession of defendants naturally presented the idea of subordination to the right or claim held by her to the homestead. It was such in its inception; for ought she knew or could learn, it remained as such up to the death of her husband.

The fact that the leases were void as against her, avails nothing in favor of defendants. He who enters under a void lease is estopped equally with him who holds under a valid instrument.

It is true the defendants testify in substance that they only accepted the lease of January 20, 1880, at the urgent request

of B. F. Mauldin; that they did not desire it; that they paid no rent, and did not enter into possession thereunder.

We assume these statements to be true, but there are two answers:—

*First*—These facts were unknown to plaintiff. To her the case was only presented in the aspect of a new lease for a term of ten years, executed by her husband and defendants upon the homestead.

. Under the facts, as they then appeared to her, defendants could not set up an adverse title.

*Second*—Placing out of view altogether the lease of 1880, and treating it as never having been made, we still find the lease of June 11, 1872, for ten years commencing January 1, 1874, and which consequently would not expire until January, 1884, and which leaves defendants as against plaintiff in no better position.

They had, it is true, a secret conveyance of the property, but having been in possession under the lease, the plaintiff having no notice of the deed was not bound thereby.

An entry to set the Statute of Limitations in motion must be sufficiently open and notorious to give the owner notice of the hostile claim and possession begun thereunder, and it must be hostile.

The owner must have knowledge of the adverse entry, or such information as puts him upon inquiry. (Sedgwick & Wait on Trial of Title to Land, § 730.)

"Such knowledge, or the means by which such knowledge may be attained, must be brought home to the person who was seized or possessed of the land, because the statute proceeds on the ground that he, knowing that a cause of action exists in his favor for the intrusion, yet acquiesces in it, and does not attempt to regain the possession of his land in the mode provided by law. A clandestine entry or possession will not set the statute in motion, because the owner of the land cannot be said to have acquiesced in the wrongful entry or possession. The owner will not be condemned to lose his land, because he has failed to sue for its recovery when he had no notice that it was held or claimed adversely." (*Thompson* v. *Pioche*, 44 Cal. 508.)

These views are conclusive of the right of defendants to recover on their claim of adverse possession and of the whole case.

The instructions of the learned judge, who tried the cause in the court below, afford defendants no ground for complaint.

The judgment and order denying a motion for a new trial should be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion the judgment and order are affirmed.

Hearing in Bank denied.