## MILLETT et al. v. LAGOMARSINO et al.*

### No. 15,586; November 23, 1894.

#### 38 Pac. 308.

**Adverse Possession—Notice.—**In 1873 Plaintiffs' Grantor Entered into possession of a number of lots, including the one in controversy, under a three-year lease, and retained possession of them till 1892. In 1882 he received a deed to the lot in question from a tax sale purchaser thereof, which was duly recorded, but he performed no act to change the character of his possession, and gave no notice that it was hostile. Before 1882 the lot was used by him as a cow pasture, in subordination to the owner's title. Held, that such possession did not constitute notice to the owner of said lot of the adverse character thereof.

**Quieting Title—Res Judicata.—**A Judgment Rendered in an Action for an unlawful entry of certain lands has no effect upon a subsequent action between the same parties to quiet title to said lands.[1]

**Quieting Title—Pleading.—**It is not Necessary for Plaintiff in an action to quiet title to certain lands to allege the source of such title, although his title was acquired by adverse possession.

**Adverse Possession—Notice.—**The Record of a Deed from the Owner of the tax title to one already in possession under permission of the owner does not affect the owner with notice that the possession of the grantee thereafter is adverse to his title.

APPEAL from Superior Court, San Mateo County; George H. Buck, Judge.

Action by Martin M. Millett and others against Thomas Lagomarsino and others to quiet title to certain land. Judgment for plaintiffs and defendants appeal. Reversed.

Nowlin & Fassett for appellants; Nagle & Nagle for respondents.

HAYNES, C.—This action was brought by the plaintiffs to quiet title to lot 2 in block 22 of the "City Extension Home-

---

*For subsequent opinion in bank, see 107 Cal. 102, 40 Pac. 25.

1 Cited in the note in 112 Am. St. Rep. 40, on effect of judgment against tenant as res judicata.

stead Association,'' at some place not named either in the pleadings or judgment otherwise than that it is in the county of San Mateo. The complaint is in the usual form, alleging that plaintiffs are the owners in fee, and entitled to the possession. The answer denies the ownership and title of the plaintiffs, and alleges title in John B. Cronan, one of the defendants, and that Lagomarsino is in possession under a contract of purchase upon which partial payments had been made, and that he had erected a dwelling-house thereon. The court made the general finding that all the allegations of the complaint are true and the allegations of the answer untrue, and entered a decree quieting plaintiffs' title, and awarding them possession. The defendants appeal from the judgment and an order denying a new trial.

The lot in question is one hundred feet square, and is one of many lots comprising together about ten acres, which, with other lands, were subdivided by said association (a corporation) prior to 1873. Plaintiffs claim title by adverse possession, and whether they have such title is the ultimate question. In November, 1873, Michael Millett, the grantor of plaintiffs, entered into possession of the ten acres above mentioned, under a lease for three years, executed by McNear and nine others, owners of lots, McNear being then president of the association. The whole ten acres were inclosed by a fence, none of the lots therein being separately fenced. The lot in question was sold and conveyed by the association in 1870 to John Tenney, under whom defendants claim, but Tenney did not sign the lease. Defendants claim that the possession so taken by Millett of the whole parcel was continued from that time until he conveyed to the plaintiffs in March, 1892. Tenney conveyed the lot in question to defendant Cronan in August, 1889, and Lagomarsino entered under him in the latter part of 1890, or early part of 1891, and built a house thereon; and Michael Millett conveyed by quitclaim to the plaintiffs March 14, 1892. On July 24, 1882, Jason Wight executed and delivered to Michael Millett a quitclaim deed of said lot, Wight claiming to have purchased it at a sale for delinquent taxes in February, 1878. The only evidence that a tax deed was ever issued to him was the assessment-roll, showing the lot assessed to John Tierney (not Tenney), and the tax-sale book, in which was a memorandum that ''deed issued March 6, 1879.''

That deed was not produced and was not recorded, and Wight testified that he did not remember about the deed. Plaintiffs, however, do not claim that Wight's deed conveyed a title, but that the deed constituted color of title under which Millett held adverse possession. That Millett obtained possession of the lot in question under the lease as tenant of the whole parcel is clear from his own testimony, and that he was never out of possession until he conveyed to the plaintiffs is also clear. That the lease was void as to this lot makes no difference. "He who enters under a void lease is estopped equally with him who holds under a valid instrument": Mauldin v. Cox, 67 Cal. 393, 7 Pac. 804.

Appellants contend that Millett, having entered under a lease, or by permission of the owner, cannot initiate an adverse possession without first surrendering possession; and cite Tewksbury v. Magraff, 33 Cal. 244, Hussman v. Wilke, 50 Cal. 250, and Standley v. Stephens, 66 Cal. 541, 6 Pac. 420. In reply respondents contend that the lease expired in November, 1876, and that after five years from the expiration of the lease the presumption declared by section 326 of the Code of Civil Procedure, that the possession of the tenant is the possession of the landlord, ceases, and that Millett had the right then to commence an adverse possession without first surrendering possession. The five years succeeding the termination of the lease ended in November, 1881, but Millett testified that he did not commence to hold adversely until he obtained the deed from Wight, in July, 1882. His possession prior to July, 1882, could not have affected the owner with notice of that which did not exist, viz., an adverse holding; and therefore it must appear that at or after that time Tenney had such notice of an adverse holding as would set the statute in motion. Respondents assert that the record of the deed from Wight was notice of the adverse claim. But it does not appear that Tenney had any knowledge that such deed was in existence, or had been recorded, and its record was not constructive notice to him. Section 1213 of the Civil Code is as follows: "Every conveyance of real property, . . . . from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees." The owner is neither a subsequent purchaser nor mortgagee, and is not

only not within the above code provision, but is under no obligation or duty to watch the records for conveyances made by a stranger to the title.

The question, then, is whether the possession was of such character as to be notice to the owner that it was adverse. At some time, not definitely fixed, probably in 1883 or 1884, the ten acres seem to have been divided, and thereafter Millett remained in possession of one part, containing about five acres, including said lot No. 2. The principal use of the inclosed parcel, both before and after the division, was for a cow pasture, though it was sometimes cultivated. None of the lots were separately marked off, inclosed or improved. No one lived upon any part of it. No change in the character of the possession or the use of the property took place. Millett owned some of the lots inclosed, De Forest owned at least one lot, and there were several streets within the five-acre inclosure. The plat of the subdivision with the lots, blocks, and streets had been duly recorded in 1870, prior to Tenney's purchase of the lot in question. The De Forest lot was not at any time claimed or held adversely, nor were the streets, so far as the record shows. No apparent distinction was made between the possession of the lot in question and that of the De Forest lot and the streets. If any distinction was made, it was a mental distinction, not communicated to Tenney. For nine years before receiving the quitclaim deed from Wight, Millett had been in possession of a large number of lots, owned by many different persons, holding in subordination to their title; and, without something to mark a change in the character of his possession, the possession itself could not be reasonably held to be notice that it was in fact hostile, and the possession must be hostile, or it cannot be adverse; and where its adverse character cannot be inferred from the fact of possession, notice of some kind that it is hostile must be given to the owner before the statute will begin to run against him: De Frieze v. Quint, 94 Cal. 662, 663, 28 Am. St. Rep. 151, 30 Pac. 1. In Mauldin v. Cox, 67 Cal. 387, 7 Pac. 804, the defendants went into possession under a lease, and afterward received a deed, and more than five years had elapsed after receipt of the deed before the action was commenced. At page 394, 67 Cal., and page 804, 7 Pac., the court said: ''They [the defendants] had,

it is true, a secret conveyance of the property, but having been in possession under the lease, the plaintiff, having no notice of the deed, was not bound thereby. An entry to set the statute of limitations in motion must be sufficiently open and notorious to give the owner notice of the hostile claim and possession begun thereunder, and it must be hostile. . . . . The owner will not be condemned to lose his land because he has failed to sue for its recovery, when he had no notice that it was held or claimed adversely.''

The judgment offered in evidence by the defendants was properly excluded. The answer sufficiently shows that the judgment was given against Martin Millett and wife (plaintiffs in this action) in proceedings against them for a forcible or unlawful entry upon the possession of Lagomarsino. · Such action does not involve title, and the judgment could have no effect upon this action.

Defendants offered to prove that in a conveyance executed by Michael Millett to defendant Cronan it was intended to include the lot in question, and that it was omitted by inadvertence or mistake. No issue of that kind was made in the pleadings. If the facts were as claimed, it would have been a proper case for a bill in equity to reform the deed.

Under the repeated rulings of this court the general findings made in this case were sufficient. It is not necessary, as appellants contend, for the plaintiff, in actions to quiet title, to allege the source of his title; and this rule of pleading applies where his title is acquired by adverse possession. The judgment and order appealed from should be reversed.

We concur: Searls, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed.