## PERRY *v.* PASCHAL.

103 134
108 579
103 134
119 156
d119 157
119 171
d119 600
103 134
120 894
103 134
c124 341
124 342

1. Where one by a written agreement binds himself to convey to another a designated tract of land upon the payment of a sum stated, and by the same agreement likewise undertakes to extend the time of payment to a definite time in the future, and the vendee upon his part undertakes to pay a sum certain annually by way of rent for the intermediate use of the premises, the vendee has the election at any time to tender the full amount of the purchase-money with interest, and then to demand a conveyance; and a continuing tender being made by him in accordance with the terms of the contract, the right of the vendor to demand rent thenceforth ceases.

2. An assignee of such an agreement, who takes it from the vendee, being thereby subrogated to all his rights, assumes, upon filing a proceeding to enforce the agreement, all his liabilities thereunder, and upon a continuance of the tender is entitled to maintain an action for specific performance of the agreement.

3. In view of the principles above announced, there was no error in the rulings of the trial judge which excluded from the jury the evidence offered by the defendant.

Argued October 19, 20, — Decided November 29, 1897.

Equitable petition. Before Judge Sheffield. Terrell superior court. July 6, 1897.

*James B. Parks,* by *Hoke Smith & H. C. Peeples,* for plaintiff in error. *J. H. Guerry* and *J. A. Laing,* contra.

COBB, J. On December 12, 1894, Perry signed and delivered to Sims a paper of which the following is a copy: "This is to certify that I have this day bargained to Jim Sims fifty acres

of land, off of the southeast corner of lot No. 240 in the 4th district of Terrell county, Ga. The road running from the Hayes place to Dorse Henry's being the line. I agree to make him a good title on his paying me $500. I agree to run said amount three years, provided he pays the rent promptly. Dawson, Ga., December 12, 1894." On September 26, 1895, Christie, in behalf of Sims, tendered to Perry the sum of five hundred and twenty-seven dollars, being the principal and interest due on the amount stated in the paper as the purchase-price of the land, and demanded that a deed be made conveying the property to Sims. Perry declined to make the deed. On September 28, 1895, Sims transferred all his interest under the paper above described, to Paschal, such transfer being evidenced by an entry upon the paper of which the following is a copy: "For value received I hereby transfer and assign to W. C. Paschal the within bond for title, together with all and singular my right and interest under and by virtue of same. This 28th day of September, 1895. Jim Sims. Attest: J. W. Reddy, J. P., J. R. Smith." On the 27th day of April, 1896, Paschal, through his attorney, tendered to Perry the sum of $548.15, and demanded a deed to the land described in the paper which had been transferred to him by Sims. Perry refused to take the money and to make the deed, unless Paschal would pay to him certain other amounts which Perry claimed Sims owed him for rent and supplies during the year 1895. Perry collected the rent for the year 1896. On April 27, 1896, Paschal brought suit in the superior court of Terrell county against Perry, alleging in his petition the facts above stated, praying that Perry be compelled to specifically perform the contract contained in the writing transferred to him by Sims, averring his readiness to pay the amount which was tendered on the day the suit was filed, and also praying for a judgment against the defendant for rent of the land during 1896. The defendant answered, alleging that the contract was a renewal of a contract made several years before with Sims, by which he was to pay rent each year, with the privilege of buying the land described therein, provided he paid the annual rent and all supplies advanced to him by the defendant, and the further

sum of five hundred dollars; the contract, as originally made, being intended to run for five years, and the same having been renewed for several years; and that the amount tendered was insufficient to pay what was due him under the agreement with Sims. He averred his willingness to make a deed to whomsoever may be entitled thereto, provided the amount due him under the contract should be first paid. He claimed that Sims was indebted to him $70.70 for money, supplies, etc., furnished during the year 1895, an itemized statement of which was attached to the answer. On the trial a verdict was rendered by the jury in response to questions propounded, as follows: "1st. Did J. B. Perry enter into a written contract with one Jim Sims to sell him a tract of land as set out in the petition? Answer: Yes. 2d. Did said Sims by himself or attorney ever tender the amount due on said contract to said Perry, or offer to pay it on Sept. 27, 1895? Answer: Yes. 3d. Did Sims transfer said written contract to W. C. Paschal absolutely? Answer: Yes. 4th. Did said Paschal ever tender to said Perry the amount due him, with lawful interest, on said contract, on April 27, 1896, before filing this suit? Answer: Yes. 5th. Did J. B. Perry receive the rent for said land for the year 1896? Answer: Yes, $72.50. 6th. Has said J. B. Perry been stubbornly litigious and caused said Paschal unnecessary expense? If so, how much do you find for attorneys' fees against said J. B. Perry? Answer: No." The answer to the sixth question was found by the jury from the evidence introduced; the answers to the other questions were directed by the court. The defendant's motion for a new trial being overruled, he excepted. The motion, in addition to the general grounds, alleged error upon the refusal of the judge to allow the defendant to introduce evidence tending to show that there were other conditions and stipulations between the defendant and Sims than those shown in the writing relied on by plaintiff; and also in refusing to allow evidence that Sims had offered in writing to relinquish his rights under the contract, at a time subsequent to his transfer to the plaintiff; and in rejecting evidence of a parol contract of sale of the land in controversy; made subsequently to the written contract relied on;

and in refusing to submit any question of fact to the jury other than that involved in the sixth question in the verdict.

1. Want of mutuality of obligation is, as a general rule, sufficient reason for a court of equity to refuse to decree the specific performance of a contract. Unilateral or optional contracts are not favored in equity, and are generally not enforceable there. If a contract for the sale of land, required by the statute of frauds to be in writing, is evidenced by a writing signed by one party only, but sufficient to charge the party signing, such party would be bound to perform the contract. While in such a contract there is want of mutuality of obligation, still if the party in whose favor the writing is executed, though not bound because it is not signed by him, sees proper to waive his right to insist upon the invalidity of the contract, and as evidence of such waiver files a proceeding in a court of equity to enforce it, thus affirming in writing his willingness to be bound by the stipulations in the contract, he will by such proceeding, though previously not bound, put himself under the obligation of the contract. The contract then ceases to be unilateral; for by the act of the party who was in no way originally bound by the writing the contract becomes mutual, and the other party is thereby enabled to enforce it against him. 2 Warvelle on Vendors, p. 747, § 10; Fry's Spec. Perf. (3d Am. ed.) § 448; 1 Reed on Stat. Frauds, § 364; Woodruff v. Woodruff, 44 N. J. E. 349; Miller v. Cameron, 45 N. J. E. 95; Johnson v. Tripp, 33 Fed. Rep. 530. "It has been seriously doubted by a very eminent judge [Lord Redesdale] whether an agreement, of which the memorandum was signed by one party only, should be enforced against the other in a court of equity; upon the ground, that, if so, it would follow that the court would decree a specific performance when the party called upon to perform might be in this situation, that if the agreement was disadvantageous to him he would be liable to the performance, and yet, if advantageous to him, he could not compel a performance. Notwithstanding this doubt, however, the rule is firmly settled that in equity for obtaining a specific execution, as well as at law for recovering damages, the signature of the party who makes the engagement is all that the statute requires; and

this is put upon the ground, in addition to the unqualified language of the statute itself, that the plaintiff by his act of filing the bill has made the remedy mutual. But a more satisfactory ground is that suggested by Story, viz.: 'The agreement, although originally by parol, is now in part evidenced by writing under the signature of the party, which is a complete compliance with the terms of the statute.'" Browne on Stat. Frauds, § 366. In the case of Hall v. Center, 40 Cal. 63, it was held that equity would decree the specific performance of a covenant in a lease which provided that the lessee should have the privilege of purchasing the premises for a fixed sum of money, on or before the expiration of the term. A ruling to the same effect was made in the case of Willard v. Tayloe, 75 U. S. 557. While the paper evidencing the contract in the case under consideration is informal, it might be treated as a lease of the premises for three years, with the privilege to the lessee to buy at any time for the amount stated in the contract; and thus be exactly within the rulings of these cases. Under this contract, Sims had the right at any time after its execution, during the period of three years, to tender the amount stipulated, with interest from the date of the contract up to the date of the tender, and demand a conveyance of the property from Perry. The first tender made by Sims was at a time when no rent had accrued under the contract, and therefore a tender of the principal and interest of the purchase-price was all that was required; and upon this tender, continuing liability for rent under the contract ceased.

It was contended in the argument here, that this case was controlled by the cases of *Peacock* v. *Deweese*, 73 *Ga.* 570, and *Grizzle* v. *Gaddis*, 75 *Ga.* 350 ; and that under the rules laid down in those two cases the court should have refused to decree a specific performance of the contract upon which the plaintiff relied. We do not think these cases are controlling in the case under consideration. In the former there was no consideration for the contract which was sought to be enforced. Justice Blandford says in the opinion: "The agreement is gratuitous and entirely voluntary on the part of defendant in error. A court of equity never decrees a specific performance

of a voluntary or gratuitous contract." In the present case, by according to the tenant the right to purchase during the existence of his term, the landlord secures the contract of tenancy. This is a sufficient consideration upon which to found the promise to convey the property upon payment of a stipulated amount at any time during the term. A further distinction between the two cases is, that in *Peacock* v. *Deweese* there was no relation of landlord and tenant nor of lessor and lessee existing between the parties; and the alleged purchaser was never in possession, but had simply a license to enter from time to time for certain purposes. In the present case the instrument is sufficiently broad to create the relation of landlord and tenant for a term of years, with the privilege to the tenant to purchase at any time during the pendency of the term. It further appears that the tenant entered into possession under the contract, and on the faith of it expended money and made valuable improvements upon the property. In the case of *Grizzle* v. *Gaddis* specific performance was denied specially upon the ground that the contract was too vague and uncertain to be capable of performance. While in the headnotes and in the opinion the doctrine now invoked, that unilateral contracts are wanting in mutuality and generally not enforceable, was referred to, the case turned at last upon the insufficiency of the contract in other particulars. In that case there was no amount specified at which the land might be purchased in the event that the party claiming to have this privilege was able and desired to do so. The time when he might be entitled to a conveyance was altogether indefinite. In the present case the amount at which the purchase was to be made is clearly set forth, and the time is distinctly fixed, that is, any time within three years from the date of the contract.

2. At the time that Sims transferred the paper to Paschal, all the rights of the former passed to the latter, including the right to rely upon the tender already made, if he saw proper. Sims having made the tender at the time Paschal obtained title to Sims's interest under the contract, all right in Perry to demand rent had ceased, and when subsequently, and immediately preceding the filing of the petition in this case, Pas-

chal made another tender to Perry of the amount then due upon the stipulated purchase-price, Perry had no right to refuse to make the conveyance which the contract called for. That the contract was assignable, and that Paschal succeeded to all the rights of Sims, can not be questioned. *Robinson v. Perry*, 21 *Ga.* 183; *Kerr v. Day*, 14 Pa. St. 122, s. c. 53 Am. Dec. 526.

3. The writing relied on by the plaintiff being unambiguous, there was no error in refusing to admit testimony which merely tended to establish a parol contemporaneous agreement inconsistent with the writing. Nor was there error in refusing to admit evidence to the effect that Sims had attempted to relinquish his interest in the contract after the transfer to Paschal; nor in rejecting evidence of a subsequent parol contract of sale of the land in controversy. The evidence demanding that the questions should be answered in the manner in which the record discloses they were answered, there was no error in the judge directing the jury to make such answers, nor in framing a judgment upon the verdict which was in strict accordance with its finding.

*Judgment affirmed. All the Justices concurring.*