[S. F. No. 4493.    Department Two.—June 10, 1908.]

## HENRY E. BOTHIN et al., Appellants, v. THE CALIFORNIA TITLE INSURANCE AND TRUST COMPANY, Respondent.

Title Insurance—Record Title—Tenure of Occupants Excepted— Title by Adverse Possession not Insured against.— Where a policy of title insurance, by its terms, only insured the record title to the property, and expressly excepted the "tenure of the present occupants," a title to a portion of the property acquired by adverse possession, is not insured against, and constitutes no breach of the covenant of title set forth in the policy.

Id.—Action for Breach of Covenant—Defects in Title—Title of Adverse Claimants Quieted—Trust-Deed by Stranger to Record Title.—In an action to recover damages for alleged breaches of

the covenants in such policy of title insurance, for specified defects. in the title, there can be no recovery either for the expense of defending an action to quiet title in which adverse occupants of a portion of the property prevailed, nor can a deed of trust executed by a stranger to the record title, constitute a defect in the record title insured against.

ID.—EFFECT OF RECORDING ACT.—The provisions of section 1213 of the Civil Code, that every conveyance of real property acknowledged and recorded is from the date of recordation constructive notice to subsequent purchasers and mortgagees, are inapplicable to a conveyance by one who is not in any manner connected with the title of record.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Frank McGowan, and Geo. D. Squires, for Appellants.

Olney & Olney, for Respondent.

LORIGAN, J.—This action was brought to recover damages for breach of a covenant in a title insurance policy. The facts, either admitted or proven, are as follows: On March 1, 1900, the plaintiff H. E. Bothin having entered into a contract for the purchase from the Sharon Estate Company of City Slip lots 71 and 72 in the city and county of San Francisco, applied to the defendant, a corporation engaged in issuing title insurance policies, for a policy insuring the title to said lots.

On December 13, 1900, the defendant duly issued its policy of insurance on said lots, guaranteeing the title to the same to be in plaintiff, who at the same time took a conveyance thereof from the Sharon Estate Company.

Among other things, the policy provided that the defendant, The California Title Insurance and Trust Company, covenanted to indemnify and insure said plaintiff "from all loss or damage, not exceeding $10,000, which the said assured shall sustain by reason of defects in the title of the assured to the estate or interest described in Schedule A, or by reason of liens or encumbrances affecting the same on the

13th day of December, 1900, . . . excepting only such as are specified in Schedule B; subject to the conditions and stipulations on the third page hereof, which with the schedules aforesaid are a part of this policy."

Schedule B referred to provides, in part, as follows: "Schedule B—defects of or objections to the title, and liens, charges and encumbrances thereon against which the company does not insure; 1. Tenure of the present occupants . . .; 4. Instruments, liens, encumbrances, judicial proceedings and pending suits not shown by any public record thereof in the city and county of San Francisco; and secret trusts known to the assured and not disclosed to the company." It appears that when this policy was issued there was, and for some time prior thereto had been, on record in the recorder's office of the city and county of San Francisco a deed of trust by which one P. M. Partridge conveyed to the trustees of the San Francisco Savings Union about fourteen feet of the westerly portion of said lot 71. Subsequent to the issuance of the policy to plaintiff it was discovered that the adjoining owners of property to the west of lots 71 and 72 described in the policy had encroached about fourteen feet thereon with their buildings, and that the buildings of plaintiff encroached to a like extent upon the owners of City Slip lots 73 and 74 on the east. In fact, it appeared that neither the owners of property to the west of the lots purchased by plaintiff nor the predecessors in title of plaintiff had erected their buildings on the true line, but respectively about fourteen feet easterly thereof. One of said encroaching owners was said P. M. Partridge, whose trust-deed above referred to was on record when the policy was issued. The description in that deed did not refer to lot 71 by name, and that it embraced any portion thereof could only be determined by a survey according to the calls of the trust-deed. Some question arising subsequent to the issuance of the policy as to the lines between them, Partridge brought an action against plaintiff to quiet his title to the fourteen feet of the westerly portion of lot 71 which was in his actual occupancy and which was embraced in his trust-deed, and one John A. Schmidt, adjoining him on the north, brought a similar suit against plaintiff to quiet title to about the same number of feet on the westerly portion of lot 72 which was in his

possession and occcupied by his buildings. Judgment in
these actions went in favor of the plaintiffs to the portions
of lots 71 and 72 and their title quieted thereto. Plaintiff
here likewise brought actions against parties claiming under
the record title to about fourteen feet of the property to
the east of said lots and beyond the easterly line thereof,
but of which he was actually in the occupancy with his
buildings, and obtained judgments quieting his title thereto.

It further appears from the findings that plaintiff here,
while not obtaining possession of the entire property em-
braced within lots 71 and 72, obtained the identical property
that he had looked at and had in mind when he obtained
his deed from the Sharon Estate Company, and substantially
of the same dimensions as there called for.

There is no claim that P. M. Partridge had any title of
record to any portion of lot 71, or that the trust-deed ex-
ecuted by him embraced in its description any of the im-
provements of plaintiff which were supposed to cover the
entire lot. Neither is there any claim that lot 72 was
embraced within the calls of any instruments in writing,
save those constituting the chain of title of plaintiff, and
it is conceded that the plaintiff had the record title to both
these lots.

The claim of plaintiff was that he had sustained damages
embracing an amount which he had paid for attorney's
fees and expenses in defending the actions brought by
Partridge and Schmidt, as also damages for alleged de-
preciation in value of the property described in the policy,
occasioned through the irregular shape in which the judg-
ments in these suits left the remainder of the lots.

The court awarded judgment in favor of defendant, and
from said judgment and the order denying his motion for a
new trial, the plaintiff appeals.

The main point on this appeal is relative to the title of
Partridge to the portion of lot 71 which was included in
his deed of trust, it being insisted by appellant that there
was a breach of the covenants contained in the policy by
reason of this trust-deed being upon the record. Taking,
however, into consideration the covenants of the policy,
this claim is not tenable. It is quite clear from the con-
ditions of that instrument that what was insured by the

CLIII Cal.—46

respondent was that the record title to the lot was in appellant. It is not insisted, nor could it be, that Partridge had a record title to any portion of the lot in question. The evidence shows that he had not. In fact, it was admitted that the record title to the lot was in the appellant, and it is evident from the policy that this was all that the respondent insured. The only title which Partridge had was a title to a portion of the lot acquired by adverse possession, but this, the respondent not only did not insure, but expressly declared it did not in that provision of Schedule B wherein it is stated that, among other defects of or objections to the title not insured against, was the "tenure of the present occupants." "Tenure" is a term of extensive signification. While it means the mode by which one holds an estate in land, it imports any kind of holding from mere possession to the owning of the inheritance. (Bouvier Law Dic.; Anderson's Law Dic.: Term "Tenure.")

Now, the only title that Partridge held to the lot was the title acquired by adverse possession. His tenure of the property was exclusively that of an adverse occupant. He had no title of record and against his title acquired by reason of his adverse occupancy the policy expressly declared it did not insure when it provided it did not insure against the "tenure of the present occupant." As far as the record title to the lot is concerned, the respondent did insure it to be in appellant, but as against any title or right to the property asserted by one who might be in possession thereof, holding adversely to the record title, insurance was expressly denied. It was left to the appellant to determine by an inspection and examination of the property whether there was adverse occupancy or not; to determine for himself by actual measurement, survey, or examination of the premises whether he was getting what he contracted to purchase, or whether there was an adverse claim of title of any character by the occupants of the whole or any portion of the premises. Necessarily the record title is all that a title insurance company can safely or judiciously insure. While the title to real property may be disclosed by the record to be in one person, it may, in fact, be in another through adverse possession or in one in occupation of the property under an unrecorded conveyance. It is the

possibility of the existence of these conditions as to the title which an insurance company provides against by insuring the record title, and none other. In the case at bar the policy only insured the record title and as that is conceded to have been in appellant and the title of Partridge to the portion of the lot in question resting solely upon adverse possession against which respondent did not insure, there was no breach of the policy of insurance.

But it is claimed by counsel for appellant that the provision in Schedule B of the policy that the insurance company did not insure against "the tenure of the present occupants" is not controlling as to the responsibility of the respondent under the evidence in the case, but it is insisted that there was a breach of the policy as to the Partridge title under the fourth subdivision of Schedule B which provides that the company does not insure instruments, liens, or encumbrances not shown by any public record. The claim is that under this subdivision appellant was insured against any "defect" in the title disclosed by public records of the city and county of San Francisco, and that the deed of trust from Partridge to the San Francisco Savings Union was a "defect" in the title as that term is used in the policy of insurance. Undoubtedly, the policy does insure against any defect in the record title, but the trust-deed of Partridge was not a defect in such title. There was no title appearing of record in Partridge to any portion of the lot in question. There was no instrument of any kind or character of record which purported to convey any interest in this lot to him. He was not connected with the chain of title in any respect. That chain produced from the records showed the title to be in appellant. This being true, the deed of trust from Partridge created no defect in the record title. As far as the record title was concerned, Partridge was a mere interloper. One who is not connected by any conveyance whatever with the record title to a piece of property and makes a conveyance thereof, does not thereby create any defect in the record title of another when such title is deducible by intermediate effective conveyances from the original owners to that other. This we think so clear that it is idle to attempt to elaborate it. Such a deed would not even be constructive notice. Our code provides that every

conveyance of real property, acknowledged and recorded, is from the date of recordation constructive notice of its contents to subsequent purchasers and mortgagees. (Civ. Code, sec. 1213.) This language is very general, applying in terms to *every conveyance,* but it is held that this only contemplates conveyances by one having legal title to the property conveyed and is applied where there are conflicting conveyances made by persons claiming under the same common grantor. It does not apply to a deed by a stranger; one who is not connected in any manner with the title of record. No notice whatever is conveyed by such a deed. (*Long* v. *Dollarhide,* 24 Cal. 218; *Garber* v. *Gianella,* 98 Cal. 529, [33 Pac. 458]; *Sharon* v. *Minock,* 6 Nev. 377; *Rankin* v. *Miller,* 43 Iowa, 19; *Edwards* v. *McKernan,* 55 Mich. 526, [22 N. W. 20].)

It may be suggested, too, in this connection, that the loss to appellant of a portion of his lot 71 did not arise out of the alleged defect in the record title of appellant created by the trust-deed from Partridge, but for a cause entirely independent of it. It arose from the fact that Partridge had acquired title by adverse possession of the land; not from any defect in appellant's record title. This title by adverse possession respondent did not insure against, but expressly provided that it did not.

While there is involved in the appeal a claim of breach of the covenants as to that portion of lot 72 to which Schmidt had title by adverse possession, little need be said on the subject. What we have said relative to the Partridge title applies equally to the Schmidt title. As to this lot 72 there were no instruments of any character on record embracing any portion of it, except such instruments as made out the record title of appellant. Schmidt's tenure of the portion of lot 72 at the time of the issuance of the policy was solely that of an adverse occupant or claimant. He had no title of record and his title by adverse possession was not insured against, because, as we have seen, it was expressly provided in the policy that the respondent did not insure against "the tenure of the present occupants."

The judgment and order denying the motion for a new trial are affirmed.

Henshaw, J., and McFarland, J., concurred.