[Civ. No. 3298. Third Appellate District.—August 15, 1927.]

SARAH ELIZABETH LUDY, Respondent, v. I. G. ZUM-
WALT et al., Defendants; WESTERN CANAL COM-
PANY (a Corporation), Appellant.

Guy C. Earl and W. H. Spaulding for Appellant.

Ware & Ware, U. W. Brown and I. G. Zumwalt for Respondent.

HART, J.—The plaintiff brought this suit to foreclose a a mortgage upon certain lands situated in Glenn County given by the defendants I. G. and Mattie B. Zumwalt to plaintiff to secure the payment to the latter of a promissory note, dated January 13, 1920, for the sum of $42,601.30.

The complaint is in the usual form in foreclosure proceedings. It alleges, however, that the appellant Western Canal Company and certain other parties "have, or claim to have, or assert, some interest in or claim upon said mortgaged lands and premises, or some part thereof, the exact nature of which is unknown to plaintiff, and for said reason she

cannot allege or state the nature thereof, but she alleges that all of said liens, claims or interests of any of said defendants are subsequent to and subject to the lien of plaintiff.''

The Zumwalts answered, denying that the note "is now due'' and also the allegation of the complaint, which accords with a provision of the mortgage in that respect, that two per cent of the amount found due as principal and interest on said note "is a reasonable amount for attorney's fee in the foreclosure of said mortgage,'' and setting up "a separate defense'' to the effect that, prior to the commencement of this action, and since the thirteenth day of January, 1924, the plaintiff in writing extended the time for the payment of said note to January 13, 1925. At the trial, however, the Zumwalts withdrew their denial that the note was due and their affirmative defense that plaintiff had extended the time for the payment thereof, leaving as the only issue as between the plaintiff and the Zumwalts the question, raised by their answer, whether the attorney's fees claimed by the complaint and as provided for in the mortgage would constitute a reasonable sum to be awarded plaintiff for that purpose.

The appellant Canal Company, a corporation organized for the purpose, among others, of supplying water to owners of land conveniently adjacent to its water system for the purpose of irrigation, answered the complaint, and in its answer embodied, in effect, a cross-complaint, in which it set up a lien upon the lands in question, growing out of a contract with the Zumwalts, whereby it agreed to furnish the latter, at specified rates, for a number of successive years, sufficient water with which to irrigate the lands in controversy, alleged that said lien was prior and superior to the lien of plaintiff's mortgage to foreclose which is the object of this action, and prayed that a decree be entered so adjudging.

The plaintiff answered the affirmative allegations of the so-called answer, and, after certain denials, and with more or less detail, recited the facts leading to the several transactions out of which the present controversy has developed and of which such consideration will hereinafter be given as will conduce to a proper understanding of the issues

tried and determined below and now submitted here for review.

The findings by the trial court are favorable to the plaintiff, and, consequently, negative the claim by the appellant of a lien upon said lands prior in point of time to that of the plaintiff. As a matter of law the court concluded (conclusions of law) that the plaintiff was entitled to judgment against the Zumwalts for the sum of $41,601, as principal and $1,554.62 and $1,383.24, accruing, respectively, as interest to the date of the verification of her complaint, and subsequent to such verification, to January 13, 1925; that plaintiff is entitled to judgment decreeing that her mortgage is a first lien and "prior to any lien or claim of any character or kind whatever of any defendants, including the Western Canal Company, upon the lands described in the complaint"; that the plaintiff is entitled to have her mortgage and lien foreclosed, and is entitled to a judgment of foreclosure of the same and of the sale of said lands described in the complaint; that she is entitled to a provision in said judgment that she has a first lien upon all of said land for the payment of the sums found by the court that she is entitled to; that Western Canal Company is entitled to a judgment against the Zumwalts for the sums of $2,159.81 and $6,723, and interest on said sums from, respectively, December 1, 1921, and from December 1, 1922; that appellant is entitled to have a provision inserted in said judgment that "it has a lien upon the said 866 acres of land (the land upon which plaintiff's mortgage and the appellant's lien subsist) in the foregoing findings mentioned for the payment of said sums for which it is entitled to judgment, which lien is second to and subordinate to the lien in plaintiff's favor, as aforesaid.

Judgment was entered in harmony with the findings and conclusions of law.

The appeal is by Western Canal Company, upon the judgment-roll alone, from so much of said judgment as adjudges or decrees that its lien upon said lands is secondary and subordinate to the plaintiff's mortgage lien thereon.

The facts, as disclosed by the findings, may be herein stated as they are set out in appellant's opening brief, and which are among the facts specifically found by the court:

"Plaintiff owned an undivided one-half interest in a nine hundred twenty-three acre tract of land in Glenn County. The other half interest was owned in equal shares by eight other persons, her children. On September 22, 1919, in consideration of the payment of $5000.00 by defendant I. G. Zumwalt to said children, plaintiff and her children granted said Zumwalt an option for the purchase of said 923 acres. While said option was still alive, and on December 11, 1919, a contract was made between said Zumwalt and said appellant for the sale of water to irrigate all irrigable land in said tract, which proved to be 866 acres thereof, particularly described in the findings of fact and being all of said 923 acre tract 'save the sloughs and small waste parts and portions thereof.' On December 15, 1919, this water contract was recorded in book 6 of Contracts and Agreements, at page 435, in the office of the county recorder of said County of Glenn, and later recorded, on January 5, 1920, in book 44 of Mortgages, at page 188 thereof, in said office of said county recorder.

"At the time this contract was made, and at all times until after the commencement of this action, appellant was informed and believed that said I. G. Zumwalt owned all the property described in said contract, free and clear of any and all liens and encumbrances, except, of course, the lien of said contract for the payment of water bills, and had no actual information or actual knowledge to the contrary, and would not otherwise have furnished any water upon any of the lands described in said agreement. By the terms of said contract appellant was granted a permanent lien upon said lands as security for the payment of all moneys due or to fall due thereunder, such lien to be a first and prior lien.

"On January 13, 1920, plaintiff and her said eight children conveyed by deed the said 923 acres to said Zumwalt, plaintiff being at that time the owner of an undivided one-half interest in the said lands, and the eight children then owning each an undivided one-sixteenth interest therein. Simultaneously with the execution of said deed said Zumwalt paid said eight children in full for their aggregate one-half interest in said land the sum of $42,601.30, including said $5000. Said Zumwalt paid plaintiff nothing in cash, but in consideration of her half interest in said

property, said Zumwalt executed and delivered at that time to plaintiff his note for $42,601.32, secured by a mortgage from said Zumwalt and his wife to said plaintiff covering said 923 acres; said note and mortgage being given to secure to said plaintiff her one-half share of the purchase price of said land as owner of the half interest therein. Plaintiff, at the time she took said note and mortgage, had no knowledge or information of said contract between said Zumwalt and Western Canal Company or that said Western Canal Company claimed any lien upon any of said land, and would not have accepted said note and mortgage had she known of said lien in favor of appellant. Said mortgage was thereafter, on January 16, 1920, recorded in the office of the said county recorder.

"Under the terms of said contract appellant did, during the year 1921, furnish on said lands water of the value of the principal amount of $2159.81, and likewise during the year 1922 water of the value, under said contract, of $6723.00.

"Said Zumwalt paid neither of said water bills nor any interest thereon. Having also defaulted in payment of his note to plaintiff, plaintiff brought suit to foreclose her said mortgage."

It may be added to the above statement that the court, both as a matter of fact and of law, found that I. G. Zumwalt and Mattie B. Zumwalt, prior to the execution of the deed by plaintiff and her children, conveying the land in question to I. G. Zumwalt, "had no right, title or interest in the lands and premises described in plaintiff's complaint and they had no right, title or interest therein at the time of the execution of said agreement in the form of exhibit A (the agreement between appellant and I. G. Zumwalt for the furnishing by the former of water for irrigation purposes to said Zumwalt), or at the time of the recordation of said agreement in the form of Exhibit A on the 5th day of January, 1920, as alleged in the answer of said defendant Western Canal Company, except that said defendant I. G. Zumwalt obtained from the parties executing the deed as aforesaid, on September 22, 1919, in consideration of the payment of $5,000.00 by said I. G. Zumwalt, to the parties other than plaintiff executing the deed as aforesaid, an option for the purchase of the lands described in said deed,

which said option was in full force and effect at the time of the execution and also at the time of recordation of said agreement in form of Exhibit A aforesaid," etc.

The court, among its findings, also made the following, which, it is to be noted, partakes as well of the nature of a conclusion of law as of a finding of fact: "That the said mortgage so made, executed and delivered by defendants I. G. Zumwalt and Mattie B. Zumwalt to plaintiff was and is wholly a purchase money mortgage and was given, made and executed in order to secure the payment to plaintiff by said I. G. Zumwalt and Mattie B. Zumwalt of the purchase price agreed upon at the time of the sale of said property to the said I. G. Zumwalt, as aforesaid."

The plaintiff urges several different points in support of the judgment. The most important of these are the following: 1. That, as the court found, the mortgage to foreclose which is the object of this action is "a purchase money mortgage," it having been given by the nonappealing defendants to secure the payment of the purchase price of the lands, and that it takes precedence over and is superior to the previously recorded lien growing out of appellant's water contract of December 11, 1919; 2. That, at the time of the recordation of the appellant's lien, the Zumwalts were in no way connected with the title of record to the mortgaged premises, hence the recordation of appellant's lien imparted no notice of the existence of such lien upon the mortgaged premises and, therefore, cannot hold the position of priority over the lien of plaintiff's mortgage.

The briefs of counsel are devoted mainly to the discussion of the point first above stated, but the consideration thereof herein is not required or necessary, since it seems to be clear that upon the authorities, as well as upon principle, the judgment must be sustained upon the ground that, as the Zumwalts, at the time of the making and the recordation of the water contract with appellant, or at the time plaintiff's mortgage was recorded, had no title of record or were in no manner connected with such title to the mortgaged premises, the lien attached to said premises by the water contract gave no notice to anyone of the existence thereof on said lands, and was consequently subordinate or subservient to plaintiff's lien. Section 1213 of the Civil Code relating to the recordation of conveyances of real

property, or so much thereof as is pertinent to the present inquiry, reads as follows: "Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees."

*Bothin* v. *California Title Ins. Co.*, 153 Cal. 718, 723, 724 [96 Pac. 500], was a case in which the title company issued to the plaintiff (Bothin) a policy insuring and guaranteeing the title to certain real property, numbered lot 71, situated in the city of San Francisco, and the plaintiff thereupon purchased said property. It was discovered after the transfer of the property had been made to plaintiff that one Partridge, prior to the date of the transfer of said lot to plaintiff, had conveyed to the trustees of a bank by a trust deed a lot in said city, which said trust deed included, though not by name or reference to the number thereof, fourteen feet of plaintiff's said lot and that the said bank had duly recorded said trust deed; that upon said lot so conveyed to the bank, at the time of said conveyance by Partridge, there was a building which extended on to and occupied said fourteen feet of plaintiff's lot. The trust deed not showing by the description of the property therein contained that lot 71 or any portion thereof was either by name or otherwise embraced within said description, the fact that it embraced any portion thereof could only be determined by a survey according to the calls of the trust deed. Action was by plaintiff to recover damages against the Title Insurance Company for a breach of the covenant of its insurance policy guaranteeing that there was no defect in the title of the lot or real property purchased by the plaintiff. The supreme court sustained the judgment of the trial court in holding that, inasmuch as the public records did not show that Partridge was in any way connected with the title of record to plaintiff's lot 71, or to any portion thereof, his trust deed to the bank did not and could not constitute notice that said fourteen feet had thereby been conveyed to the bank by Partridge, or, contrary to the contention of plaintiff in said action, did not "create any defect in the record title" of said lot No. 71, or in any portion thereof. On this subject, the court, discussing the rule in such cases in its abstract as well as in

its concrete application, said: "One who is not connected by any conveyance whatever with the record title to a piece of property and makes a conveyance thereof, does not thereby create any defect in the record title of another when such title is deducible by intermediate effective conveyances from the original owners to that other. This we think so clear that it is idle to attempt to elaborate it. Such a deed would not even be constructive notice. Our code provides that every conveyance of real property, acknowledged and recorded, is from the date of recordation constructive notice of its contents to subsequent purchasers and mortgagees. (Civ. Code, sec. 1213.) This language is very general, applying in terms to every conveyance, but it is held that this only contemplates conveyances by one having legal title to the property conveyed and is applied where there are conflicting conveyances made by persons claiming under the same common grantor. It does not apply to a deed by a stranger; one who is not connected in any manner with the title of record. No notice whatever is conveyed by such a deed. (*Long* v. *Dollarhide,* 24 Cal. 218; *Garber* v. *Gianella,* 98 Cal. 529 [33 Pac. 458]; *Sharon* v. *Minock,* 6 Nev. 377; *Rankin* v. *Miller,* 43 Iowa, 19; *Edwards* v. *McKernan,* 55 Mich. 526 [22 N. W. 20].)"

In *Garber* v. *Gianella,* 98 Cal. 529 [33 Pac. 458], cited in the above extract from *Bothin* v. *California Title Ins. Co.,* in an action in conversion, the plaintiff sued to and did recover judgment against the defendant for the alleged conversion of certain wheat. By a deed of conveyance from one Lorenzo Gianella, the plaintiff acquired title to and ownership of a certain tract of land. Prior to that transaction, the grantor had given his son Vincenza Gianella (defendant), a lease of said land upon a money rent for the term of five years. The said lease was not acknowledged and never recorded. During the term of the lease, and before the transfer of said land to plaintiff, Vincenza Gianella subleased the land to one Boulware. By the terms of that sublease, Boulware was, as a consideration, to pay Vincenza a yearly rent or sum in the form of one-third of the crops "in the stack at the machine." Said sublease to Boulware was recorded at the request of Vincenza. The deed to plaintiff granted or conveyed to him the land, "together with the rents, issues and profits thereof," and warranted,

for the grantor and his heirs, peaceful and quiet possession of said premises in the grantee and his heirs and assigns against the grantor and his heirs, and against all and every person and persons whomsoever lawfully claiming or to claim the same, shall and will warrant, and by these presents forever defend, subject, however, to a lease to Daniel Boulware, which said lease expires November 1, 1889." The deed contained nothing to indicate from whom Boulware obtained his lease. The wheat which the plaintiff (grantee of the land) claimed in his action was converted by Vincenza Gianella was that which Boulware delivered to the former under the terms of the sublease between Vincenza and Boulware. When negotiating for the purchase of the land, plaintiff was informed of the existence of the Boulware lease and of the fact that it would not expire until a year from the date (April 12, 1888) of the conveyance of the land to him. Affirming the judgment in favor of plaintiff, the supreme court, among other things, made the following observations which involve a statement of the reason of the rule now under consideration: "The conveyance from Lorenzo Gianella to the plaintiff had the effect to transfer to him the entire ownership of the land, including its rents, issues, and profits, subject to only such limitations as were contained in the instrument of transfer, or of which the plaintiff had either actual or constructive notice. As the lease to the defendant from his father was not recorded, there was no constructive notice thereby to the plaintiff of its existence. The lease was a 'conveyance' of the land within the definition of section 1215 of the Civil Code, and the interest in the land that was thereby created in the defendant, though limited to a right to receive the products of the land, was as void as against the plaintiff, by reason of the failure to have it recorded, as if it had been an unrecorded conveyance in fee. The record of the lease from the defendant to Boulware was not constructive notice of the lease to the defendant, or that he had any interest in the land. The provisions of recording acts are for the protection of subsequent purchasers and encumbrancers from the common grantor, and do not affect the rights of strangers to the claim of title. (*Chicago* v. *Witt*, 75 Ill. 211; *Losey* v. *Simpson*, 11 N. J. Eq. 249; *Traphagen* v. *Irwin*, 18 Neb. 198 [24 N. W. 684]; *Ely* v.

*Wilcox,* 20 Wis. 523 [91 Am. Dec. 436] ; *Long* v. *Dollarhide,* 24 Cal. 227; 2 Pomeroy's Equity Jurisprudence, secs. 658, 701.) Records are only constructive notice of a title of which they enable a party to obtain actual notice or knowledge by means of a search.''

The following California cases are to the same effect: *Millett* v. *Lagomarsino,* 4 Cal. Unrep. 883 [38 Pac. 308] ; *Dobbins* v. *Economic Gas Co.,* 182 Cal. 616 [189 Pac. 1073], the opinion being written by Mr. Justice Olney, and the doctrine under consideration therein stated with the clearness characterizing his judicial opinions. To the Califoriia cases named may be added the following from other jurisdictions in which the proposition in hand is discussed and in which the conclusions announced are in harmony with our own decisions: *Heffron* v. *Flanigan,* 37 Mich. 274; *Donovan* v. *Twist,* 105 App. Div. 171, 93 N. Y. Supp. 990; *Ryder* v. *Cobb,* 68 Iowa, 235 [26 N. W. 91] ; *Ransom* v. *Sargent,* 22 Kan. 516; *Bradley* v. *Bryan,* 43 N. J. Eq. 396 [13 Atl. 806] ; *Boyd* v. *Mundorf,* 30 N. J. Eq. 545. In the last-named case it is well said: ''Where, as in this case, the vendor of real estate records his mortgage (to secure the purchase price) at the same instant that the deed from him is recorded, he surely can have no occasion to examine the records for encumbrances created by his vendee on the property, prior to the recording of his conveyance.''

The position of appellant here, as is obvious, is that the conveyance by plaintiff to the Zumwalts of the land in controversy established the title of the latter to the lands in controversy as of the date of the option agreement whereby the plaintiff gave to the Zumwalts the right to purchase the property. But, as is said in the case of *Hawkins* v. *Harlan,* 68 Cal. 236, 237 [9 Pac. 108, 109], and equally applicable to the facts of the instant case: ''This (referring to a position taken by counsel similar to the position of appellant here) is by operation of the doctrine of relation, which is a fiction of the law adopted solely for the purposes of justice, and will not be given effect when, as in the present case, it would work manifest injustice. (*Gibson* v. *Chouteau,* 13 Wall. (U. S.) 101 [20 L. Ed. 534, see, also, Rose's U. S. Notes] ; *Shay* v. *McNamara,* 54 Cal. 169.)''

The plaintiff in the present case would manifestly have no reason to investigate the public records to ascertain whether I. G. Zumwalt or any other stranger to the title had created, or any person had acquired, a lien upon the property prior to the execution of the deed by plaintiff to the Zumwalts conveying the lands to them and the simultaneous execution of the mortgage by the latter to secure the purchase price thereof, or at least so much of such purchase price as plaintiff was entitled to. And even if she had for any reason examined the records for that purpose, she would not, under our index system of recording written instruments required by law to be recorded, have obtained any knowledge of the lien of appellant, unless she had gone further in her investigation of the records than the law contemplates. (Pol. Code, sec. 4132, subds. 1, 2 and 26.) But the more important consideration in this connection, and one which more pointedly than any other exposes the utter futility of any attempt to apply the doctrine of relation here, is the fact that by the option agreement the Zumwalts acquired no interest in the lands in dispute other than that which is comprehended within the mere right to purchase said lands within a specified time for a specified consideration. While the optionee of an option agreement, valid in all essentials and fair, may be entitled to have such agreement specifically enforced, it is to that extent only that he can claim, if, strictly speaking, he can do so at all, an equity in the property involved in the agreement. Manifestly, it cannot logically be held that, by virtue of his mere right to purchase the property which is the subject of the option, the optionee acquires any actual interest in the property itself which is the subject thereof, or that he can acquire any such interest until he has seasonably accepted or exercised his option to purchase according to the terms of the agreement. "An option," says the supreme court, in *Hicks* v. *Christeson,* 174 Cal. 712, 716 [164 Pac. 395], "is by no means a sale of property, *but the sale of the right to purchase.*" (Italics ours.) (*Dreyfus* v. *Richardson,* 20 Cal. App. 800–805 [130 Pac. 161]; *Pehl* v. *Fanton,* 17 Cal. App. 247 [119 Pac. 400]; see, also, *Menzel* v. *Primm,* 6 Cal. App. 204, 209 [91 Pac. 764]; *Howard* v. *D. W. Hobson Co.,* 38 Cal. App. 445, 455 [176

Pac. 715]; *Ware* v. *Quigley*, 176 Cal. 694, 698 [169 Pac. 377].) An excellent definition of an option is given in 29 Am. & Eng. Ency. of Law, second edition, page 606, as follows: "The distinction between a contract to purchase or sell real estate and an option to purchase is, that the contract to purchase or sell creates a mutual obligation on the party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase."

It, of course, follows from the foregoing considerations that, in making the agreement of option, the minds of the plaintiff and her children on the one hand and that of I. G. Zumwalt on the other could have come together on but one proposition, to wit: The giving by the former and the acceptance by the latter of the *right to purchase the property* for the stipulated sum within the time specified in said agreement—a right which Zumwalt was at liberty to waive or refuse to exercise. Thus it is very clear, if, indeed, there could be any doubt as to the legal stability of the proposition after an examination of the cases above considered, that the Zumwalts, prior to the conveyance of the property to them, had absolutely no interest in said property upon which they could create a lien which would or could take precedence over the plaintiff's mortgage lien.

Certainly, the fact, as found by the court, that the sum of $5,000 paid by I. G. Zumwalt as a consideration for the option, was agreeably to plaintiff, paid to her children, co-owners of the property, even if said sum was to be applied toward the payment of the latter's respective shares of the purchase price, if Zumwalt exercised the right with which he was invested by the option to purchase the property, did not have the effect of changing the nature of the transaction, in so far as the agreement of option was concerned. In other words, said payment did not impart to said agreement of option any greater dignity in legal effect than that of the ordinary option conferring upon a party the right to purchase real property. But it is unnecessary further to pursue the inquiry. We have carefully examined the cases cited by counsel for the appellant and we find nothing in them which conflicts with the conclusion herein arrived at.

The judgment is obviously legal and just, and it is accordingly affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 1, 1927, and the following opinion then rendered thereon:

THE COURT.—In their petition for a rehearing, counsel for the appellant declare that they did not and do not rely upon the doctrine of relation for the establishment of their position in this case; yet they assert in the petition that what they have always claimed and still contend is that the moment that the Zumwalts acquired title to the land through or by means of the deed to them from the plaintiff and her children, such "after-acquired" title in effect imparted validity to the appellant's lien, or, in other words, said conveyance inured to the benefit of the appellant as a lien claimant upon the land. The doctrine of "after-acquired" title is, in effect, the same as the doctrine of relation. The repudiation of the doctrine of relation by counsel for the appellant as the breastwork of their position warrants the assumption, that it is by it granted that its lien was wholly without validity and legal force until the Zumwalts acquired title to the property. But, be that as it may, the proposition upon which appellant mainly relies in its petition is that its lien takes precedence over the mortgage lien of plaintiff because the former lien was recorded prior to the recordation of the latter lien. The difference, however, between appellant's position and the conclusion arrived at by this court is: That the appellant assumes, contrary to its declaration in the petition regarding the doctrine of relation, that the Zumwalts became identified or connected with the title to the property by virtue of the agreement of option, whereas our position is, as indicated in the former opinion, that the option agreement did not have any such effect; that said option merely involved a unilateral agreement which does not become a contract *inter partes* in the sense of an absolute contract to convey on the one side and to purchase on the other, until exercised by the optionee; that, in other words, an option is not a sale, but a right to exercise a privilege, and only when

that privilege has been exercised in the manner provided in the agreement does it become a binding contract (*Barnes* v. *Rea,* 219 Pa. 279 [68 Atl. 836]; *Perry* v. *Paschal,* 103 Ga. 134 [29 S. E. 703]; that, such being the case, the filing for record of appellant's lien did not impart constructive notice to the plaintiff or to anyone else of the existence of such lien, since such agreement could not vest in the Zumwalts title to the land or connect them in any way therewith.

The appellant in its petition cites a number of cases other than those mentioned in its original briefs as in support of the position they assume in this case. Those cases are from other jurisdictions and some of them construe the statute law of their respective states, which is in terms the same as section 1213 of our Civil Code, in harmony with the view of appellant. Other cases that are so cited or rather named in connection with the cases cited and which are referred to in volume 25 American Law Reports, page 89, construed the section of our code just named as it is interpreted by the su-. preme court in *Bothin* v. *California Title Ins. Co.,* 153 Cal. 718, 723, 724 [Ann. Cas. 1914D, 634, 96 Pac. 500], which is cited in our original opinion. We still adhere to the view expressed in the original opinion that the California case just mentioned and other cases referred to in the original opinion clearly hold that the recordation of a deed by a party to whom such instrument purports to convey real property in which he has no interest or with the record title to which he has no connection will not and cannot have the effect of imparting notice to the real owner of the property or the public of such conveyance. If the Zumwalts, at the time of executing the contract with the appellant, were connected in any way with the record title to the property, then the position of appellant here would be impregnable; but, as stated, it is clear to our minds that at the time mentioned the Zumwalts had no more connection with the title to the property than any other person having no transaction with the owner of the land regarding said property.

The petition for a rehearing is denied.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 13, 1927.