## In re John V. MERTEN and Anita B. Merten, Debtors.

### Bankruptcy No. 93–06991–H11.

United States Bankruptcy Court, S.D. California.

March 2, 1994.

642

Alan D. Bersin, U.S. Atty., James J. Posedel, Sp. Asst. U.S. Atty., San Diego, CA, for IRS.

Dennis J. Wickham, Seltzer Caplan Wilkins & McMahon, San Diego, CA, for OCC.

Margaret M. Mann, Luce, Forward, Hamilton & Scripps, San Diego, CA, for Farm Credit Services.

John W. Cutchin, Duckor & Spradling, San Diego, CA, for ERA Jackson McCombs Realty.

John L. Smaha, John Smaha & Associates, San Diego, CA, for debtors.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

At issue is whether Imperial–Yuma Production Association's ("PCA") perfected security interest in the debtors' option contract rights to purchase real property attaches to proceeds generated from the debtors' postpetition exercise of its option contract rights and subsequent sale of the real property.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District court, Southern District of California. This is a core proceeding pursuant to § 157(b)(2)(E) and (K).

### FACTS

PCA is a secured creditor in this bankruptcy case by virtue of its properly recorded deeds of trust on certain property owned by the debtors and its properly perfected security interest in all of the debtors' personal property, including crops and general intangibles. The farmer debtors entered into two lease option agreements with different lessors. One option agreement was separate from the lease agreement; the other was contained in the lease. PCA did not hold recorded deeds of trust on either property.

On or about November 30, 1993, the court authorized the debtors to exercise the options. The court also authorized the debtors to sell the properties free and clear, through a double escrow, to a third party. PCA objected to the sale alleging its security interest in the option contract rights should survive the sale and attach to the proceeds. The court approved the sale, but ordered the debtors to segregate the disputed proceeds in a blocked account. PCA contends that its security interest in all the debtor's personal property attached to the option agreements related to both leases, and subsequently to the proceeds from the debtors' resale of the properties.

The Official Creditors Committee, the debtors, the real estate broker who sold the property, and the Internal Revenue Service ("IRS"), all filed opposition to PCA's motion to compel turnover of the sale proceeds. The IRS's lien against the real property in the amount of $60,402.81 attached to the sale proceeds.

### DISCUSSION

It is undisputed that the security agreement between the debtors and PCA granted PCA a security interest in all the debtors' contract rights and general intangibles. It is also undisputed that PCA's security interest was perfected by filing a Uniform Commercial Code ("UCC") financing statement with the California Secretary of State.

Under UCC § 9–106, as adopted in California, "general intangibles" means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money. "General intangibles" for purposes of secured transactions include contract rights and rights to performance. *Dynair Electronics, Inc. v. Video Cable, Inc.*, 55 Cal.App.3d 11, 18, 127 Cal.Rptr. 268 (1976). The court has found no California case law directly addressing this issue, however, California law seems to support the proposition that a security interest in an unexercised option is personalty rather than realty.

■ The grant of an option to purchase is a sale of a right to purchase. *Claremont Terrace Homeowners' Assn. v. United States*, 146 Cal.App.3d 398, 406, 194 Cal.Rptr. 216 (1983) (citations omitted); *Ludy v. Zumwalt*, 85 Cal.App. 119, 130, 259 P. 52 (1927). It creates no estate as such in the land. *County of San Diego v. Miller*, 13 Cal.3d 684, 689, 119 Cal.Rptr. 491, 532 P.2d 139 (1975) (creating an exception to this general rule in eminent domain cases).

> [I]t cannot logically be held that, by virtue of his mere right to the property which is the subject of the option, the optionee acquires any actual interest in the property itself which is the subject thereof, or that he can acquire any such interest until he has seasonably accepted or exercised his option to purchase according to the terms of the agreement.

*Zumwalt*, 85 Cal.App. at 130, 259 P. 52. "It is, in other words, a unilateral contract under which the optionee, for consideration he has given, receives from the optionor the right and the power to create a contract of purchase during the life of the option." *Claremont Terrace*, 146 Cal.App.3d at 406, 194 Cal.Rptr. 216 *citing Erich v. Granoff*, 109 Cal.App.3d 920, 927, 167 Cal.Rptr. 538 (1980).

A creditor's perfected security interest in a general intangible such as an unexercised option may or may not turn out to be valuable. For example, if the debtors sold the option rights to a third party, PCA's perfected security interest would attach to the proceeds by virtue of UCC § 9–306(1). This section defines proceeds as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." Thus, by definition, a security interest in proceeds is created when there is a lien or security interest in the underlying collateral—the option rights. On the other hand, if the options expired upon their own terms, the debtors' would no longer have any rights to which PCA's security interest could attach, thereby rendering PCA's security in the option valueless.

■ Nonetheless, even if PCA's UCC filing perfected its security interest in the unexercised options, the debtors' exercise of the options divested PCA of that interest. On proper and timely acceptance or exercise, an option as such becomes "functus officio" and ceases to be a mere option. *Smith v. Post*, 167 Cal. 69, 74, 138 P. 705 (1914). The option agreement no longer exists, and the transaction becomes a sale or a bilateral executory contract of purchase and sale, whereby the optionee acquires an equitable interest in the land. *Zumwalt*, 85 Cal.App. at 130, 259 P. 52. Thus, when the debtors' exercised the options, whatever security interest PCA may have had in the option rights was abrogated once the property was transformed into a present interest in real property. *Accord In re Valley Liquors*, 103 B.R. 961 (Bankr.N.D.Ill.1989).

Since the effect of a contract for the purchase and sale of real property is to convey or transfer equitable title, such a contract comes within the meaning of the terms "conveyance" and "transfer," as used in the statute governing recordation, and a contract for the purchase of real property is properly recorded in the book of deeds. *See* California Civil Code § 886.010; §§ 1169–1172; and § 1214; *Keese v. Beardsley*, 190 Cal. 465, 473–74, 213 p. 500 (1923). Accordingly, for PCA's security interest to be valid against the trustee or subsequent purchasers or creditors without notice, it would have to be recorded in the County Recorder's office rather than the Secretary of State's.

### CONCLUSION

PCA's security interest in the debtors' option rights was abrogated once the property

was transformed into a real estate interest.[1] This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052.

---

1. This decision does not address PCA's superpriority replacement lien that is connected to the cash collateral stipulation between PCA and the debtor.