[Civ. No. 3867.   Fourth Dist.   Feb. 4, 1949.]

BRYAN J. DUNCAN, Appellant, v. ALFRED H. LEDIG, Respondent.

Swing & Gillespie and Newby, Holder & Newby for Appellant.

Surr & Hellyer and John B. Surr for Respondent.

GRIFFIN, J.—This is an ordinary action to quiet title. Plaintiff claims to be the owner and entitled to possession and that defendant asserts some title and interest in and to the property involved. He asks that defendant be required to set forth his claims and that title be determined. Defendant answered and set up certain deeds and claimed title thereunder.

Prior to 1920, Boaz Duncan was the record owner of government Lot 1, and ¾ of Lot 2, Section 18, Township 1 north, range 5 west, S.B.M., which was subject to certain easements and rights not material here. Both plaintiff and defendant claim through this common source of title. In 1927, Boaz Duncan and his wife, now deceased, deeded, by quitclaim deed, to Lucien Gray, the property mentioned. It was recorded in 1928. Duncan claims this deed was given to secure a loan for $2,500, payable to one Mead. In 1929, the Duncans and Gray deeded the property by quitclaim to Walter R. Wheat and Frank R. Strong. It was recorded in June, 1929. Boaz Duncan claims that this deed was given as security for a loan of $7,500, part of which was used in satisfying the $2,500 obligation to Mead, and that interest thereon up to September, 1930, amounting to $1,000, had been paid. A quitclaim deed was executed and recorded on December 9, 1932, by Wheat and Strong, transferring title to one Ward. A quitclaim deed from Ward and Strong to the Roscoe Moss Company was recorded on August 10, 1933. Thence followed a quitclaim deed from Roscoe Moss Company to Walter T. Casey, recorded March 23, 1944. A quitclaim deed from

Casey to defendant Alfred H. Ledig and wife was recorded the same day. The claimed consideration paid was $600. After acquiring the property Ledig paid over $585.84 in delinquent taxes. He moved onto the property and improved it. The question as to which party and when each was in possession is confusing and will be discussed later.

Plaintiff Bryan J. Duncan claims title through his father as follows: On August 12, 1932, Boaz Duncan filed a petition in bankruptcy. For some reason, about 20 days after defendant recorded his deed from Casey, Boaz Duncan, on April 15, 1944, recorded a copy of the petition in bankruptcy in San Bernardino County. Certain acreage, placer mining claims, and the property here involved, were listed as his assets, and included therein is a statement:

"These mining claims are deeded to Frank R. Strong and Walter R. Wheat, Rives-Strong Building, 9th and Main Sts., to secure my debts to them. Just as the Government Lots 1 and 2 in another page of Schedule B (1) are deeded—all in same deed. Amount of note—$7500.00.''

On August 13, 1932, petitioner was adjudicated a bankrupt. A trustee was appointed and on February 6, 1933, the bankrupt was discharged. The trustee filed a petition for the sale of the property here involved to Boaz Duncan, which sale was for the sum of $75, and was approved on March 13, 1934. The order of sale recites that due notice was given to creditors. A trustee's deed, purporting to convey the land to Boaz Duncan, was delivered on March 13, 1934, and recorded on April 9, 1935. On May 18, 1944, Boaz Duncan conveyed the land to his daughter Margaret Duncan Hargett, for the claimed consideration of care and services rendered to him by her, amounting to $1,000. The deed was recorded on May 20, 1944. On January 18, 1946, Boaz Duncan and Margaret, by grant deed recorded January 21, 1946, conveyed the property to plaintiff Bryan J. Duncan for a claimed consideration of an unpaid promissory note in the sum of $1,000.

Defendant claims that he had no actual notice of plaintiff's claimed title until after he had purchased the property, taken possession and paid taxes thereon; that thereafter, on February 27, 1945, to protect himself, he took an assignment from Moss and Strong of all rights, obligations and notes of Boaz Duncan affecting the land here involved.

The trial court found generally that plaintiff was not the owner of the property and that defendant was the sole and

exclusive owner thereof, subject to certain easements of record; that in March, 1945, defendant entered upon the property, which was then vacant and unoccupied, and took possession thereof; that in December, 1946, without defendant's consent, against his will, and without right, plaintiff entered upon the property and was then in occupancy of it.

In a written opinion brought up with the record it is disclosed that the trial judge believed that Ledig purchased the property on March 16, 1944, for $600, and at that time he had no notice or knowledge that Boaz Duncan had any claim or interest in it; that he believed that the Roscoe Moss Company was the sole owner; that he checked the records prior to purchase but did not learn that Boaz Duncan claimed the property until after he purchased it; that for over 10 years Boaz Duncan did nothing to quiet his title against any claim of Wheat and Strong or the Roscoe Moss Company; that relying upon what appeared to be a good title, defendant purchased the property, paid taxes thereon and improved it; that plaintiff was in no better position than his father and was not a bona fide purchaser without notice; that the transfers between the father, daughter and son were more fictitious than real, and that Boaz Duncan was still the real party in interest.

It is plaintiff's argument on appeal that the quitclaim deed in 1929, from Boaz Duncan to Wheat and Strong was and is an unforeclosed, outlawed mortgage, and hence did not vest any title to the land in the defendant vendee, citing such cases as *Henley* v. *Hotaling,* 41 Cal. 22; *Peninsular etc. Co.* v. *Pacific S. W. Co.,* 123 Cal. 689 [56 P. 604]; Civil Code, sections 2924-2925; and Code of Civil Procedure, sections 726-744; and that the only effect of the transfer to defendant and his predecessors in interest was to transfer the mortgage and not any title to the property, citing *First Federal Trust Co.* v. *Sanders,* 192 Cal. 194 [219 P. 440]; and *Brandt* v. *Thompson,* 91 Cal. 458, 461 [27 P. 763].

The difficulty with this argument is that defendant does not rest his entire claim of title under this theory. His claim is, as we understand it, that ''When a grant of real property purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee or his heirs or devisees, or persons having *actual notice,* unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the

office of the county recorder of the county where the property is situated." (Civ. Code, § 2950.) (Italics ours); that under section 18 of the Civil Code "Notice is: 1. Actual—which consists in express information of a fact, or, 2. Constructive—which is imputed by law"; that since there is evidence that Ledig did not have "express information," or actual notice, and the court so found, defendant was not bound by any claim of plaintiff that the conveyance was intended to be defeasible on the performance of certain conditions where no such instrument of defeasance was executed, acknowledged and recorded as provided by section 2950 of the Civil Code; that the mere recordation, in 1944, of the petition in bankruptcy and the trustee's deed in 1935, was not actual notice of such claimed defeasance; that therefore he was entitled to rely upon the purported absolute conveyance and that his title to the property was good. *Payne* v. *Morey,* 144 Cal. 130 [77 P. 831], supports this contention. See, also, *Rowley* v. *Davis,* 34 Cal.App. 184, 189 [167 P. 162], in which case the grantor claimed that a deed absolute was given as a mortgage and subsequently recorded his own declaration that the deed was intended as a mortgage. It should be noted that in that case, in discussing what notice was necessary, in one instance the court uses the qualification "as actual or constructive notice," and in another statement it particularly holds such notice must be "actual notice." Regardless of the use of these two statements, the court does not definitely hold that such notice may be *actual or* constructive, and does not overrule or qualify the holding in *Payne* v. *Morey, supra,* which it cites with approval.

In the Rowley case it was held that recordation of the declaration that the absolute deed was intended as a mortgage was a self-serving one and not sufficient to import notice. In the instant case the recordation of the bankruptcy schedule in 1944, prepared by Boaz Duncan, stating that the deed given was to "secure my debts to them" would fall in the same classification as a self-serving declaration, particularly where such recordation was subsequent to defendant's deed from Casey, and where the declaration failed to describe the claimed mortgage or property affected with sufficient particularity. The Rowley decision mentioned the fact that "Subsequent purchasers from her grantee were not bound to search the records to ascertain whether some such declaration had been made."

█ Plaintiff relies upon the recorded trustee's deed to Boaz Duncan in 1935, as being notice to defendant of Duncan's claim that the original quitclaim deed given by him was intended as a mortgage. At the time Duncan purchased the property for $75 the bankruptcy proceedings had long since been terminated. The *deed* from the trustee merely transferred any right, title or interest the bankrupt Duncan had in and to the property described. It made no mention that the property was or ever had been subject to a mortgage as security for the payment of any obligation or that any of defendant's predecessors in interest were or ever had been creditors or ever received notice that they had been listed as creditors in the bankruptcy proceedings. It is therefore clear that if Boaz Duncan had parted with title prior to the bankruptcy proceedings, the trustee in bankruptcy took no more title than Duncan had. See *Adams* v. *Collier*, 122 U.S. 382 [7 S.Ct. 1208, 30 L.Ed. 1207], wherein it was held that the fact that a bankrupt included in his schedule lands formerly deeded to his children cannot affect the rights of his grantees. █ Under section 1213 of the Civil Code the recorded conveyance was constructive notice only of *its* contents. Under section 2925 of the Civil Code ''The fact that a transfer was made subject to defeasance on a condition, may, for the purpose of showing such transfer to be a mortgage, be proved (except as *against* a *subsequent purchaser* or encumbrancer *for value* and *without notice*), though the fact does not appear by the terms of the instrument.'' (Italics ours.)

Plaintiff contends that the evidence and pleadings disclose as a matter of fact and of law that defendant had actual as well as constructive notice before or at the time he purchased the property that the original quitclaim deed was a mortgage and that title thereunder did not vest. █ There is a presumption arising from the execution and delivery of a deed absolute in form that it is made in pursuance of an agreement to sell, and that it vests an absolute title in the grantee. (*Chapman* v. *Hicks*, 41 Cal.App. 158 [182 P. 336].) █ That a presumption is evidence and may be considered by the trial court as such needs no citation of authority. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 P. 529].)

█ Additional evidence on the subject of notice and of possession of the property may be thus summarized: Boaz Duncan was about 78 years of age in 1943. The property here involved abuts the hills near San Bernardino and is somewhat

rugged. A little unpretentious cabin was on it. Boaz lived in it, off and on, for some years until his health failed in 1943. He then lived with his daughter near Los Angeles and probably visited the cabin intermittently over the years. The relationship between the father and daughter and son was close and the trial court was justified in believing that the transferring of the property to them was more fictitious than real and that Boaz Duncan was still the real party in interest. When defendant moved onto the property in 1944 he found a window broken out, the doors were not locked, nothing but broken-down furniture, the water pipes clogged, and the property in general was in a very much run-down condition, which might well have indicated that it had been abandoned. Defendant cleaned the irrigating system, cleared away brush and dead trees, planted garden, and generally improved the property. During this course of operation, in 1945, Boaz and the daughter came to the cabin. Boaz remarked to defendant that it looked as though he, the defendant, was doing a lot of work for him. Defendant answered that "There is a possibility," but he didn't see that he had any right to say that. The daughter then asked permission of defendant to take with her some concrete pots left there by her. This permission was granted and defendant's employees helped her load them into her car. Some time later defendant and Walter T. Casey, an attorney, went to see plaintiff and discussed their respective claims. No settlement was reached. Later, in 1946, plaintiff asked defendant to refrain from going onto the property as he was bringing this action. It was agreed that defendant would not do any further improving of the property but would be permitted to go upon it and attend his garden and harvest it pending the decision of the action. Defendant definitely testified that neither Mr. Casey nor any of his predecessors in interest, ever informed him, prior to his purchase of the property, that the original quitclaim deed was claimed by anyone to have been given as security for any debt; that he thought Roscoe Moss Company had "complete ownership"; that he was not informed of this claim by the Duncans until after he had taken possession of the property and paid delinquent taxes thereon and improved it. Neither Mr. Casey nor any of the predecessors in interest were called as witnesses in behalf of either party. Plaintiff relies upon these circumstances to establish the fact that defendant did have actual as well as constructive notice that

the original quitclaim deed was in fact intended to operate as a mortgage only.

While there were some circumstances indicating that defendant might have been placed upon notice and bound to make some further inquiry as to the nature of his title before purchasing the property, his testimony is that he was not so informed and had no notice by anyone that the original quitclaim deed was given as a mortgage, and the trial court so found. ▮ Under well-established principles of law this finding cannot be disturbed on appeal. (*Chapman* v. *Hicks, supra*, at p. 163.) Section 2950 of the Civil Code was therefore applicable.

The best estimate of the value of the premises at the time was about $1,500. Defendant places some emphasis upon the fact that plaintiff was not prejudicially harmed by this judgment; that since plaintiff has not offered or tendered payment of the $7,500, plus interest since 1930, which amount he claims he obtained and for which he deeded his property as security, and does not offer to pay delinquent taxes for many years, which taxes were paid by defendant to prevent the property from being sold, equity would not permit him to have his title quieted unconditionally without repayment of these amounts.

Since the judgment must be upheld upon the theory found, we need not consider this argument, even though it has merit. (*Brown* v. *County of Los Angeles,* 77 Cal.App.2d 814, 816 [176 P.2d 753]; *Chapman* v. *Hicks, supra; Wood* v. *Willey,* 136 Cal.App. 197, 199 [28 P.2d 367].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied March 3, 1949, and appellant's petition for a hearing by the Supreme Court was denied March 31, 1949.