[No. B025765. Second Dist., Div. Three. May 13, 1988.]

FAR WEST SAVINGS AND LOAN ASSOCIATION, Plaintiff and Respondent, v.
MARY P. McLAUGHLIN et al., Defendants and Appellants.

68

**COUNSEL**

Lawson M. Brown for Defendants and Appellants.

Levinson & Lieberman and Wendy Y. Watanabe for Plaintiff and Respondent.

**OPINION**

**CROSKEY, J.**—Defendants and appellants, Mary P. McLaughlin and Barbara Nicholls (McLaughlin) appeal from a summary judgment granted in favor of plaintiff and respondent Far West Savings and Loan Association (Far West). Far West claims priority for its deed of trust over an earlier recorded encumbrance given to McLaughlin by an unrecorded grantee whose deed placing him in the chain of title was not recorded until the same date as Far West's deed of trust. As we hold (1) that in order for such earlier recorded encumbrance to impart constructive notice to a subsequent

bona fide encumbrancer for value it must be *rerecorded after* its trustor is in the chain of title and (2) that Far West did not have actual knowledge or notice of the earlier encumbrance, we affirm the judgment.

### FACTUAL BACKGROUND

On June 1, 1982, Frederick Geiger (Geiger) acquired record title to real property in Sylmar located at 13553 Polk Street. A purchase money deed of trust from Geiger to Hancock Savings and Loan Association for $92,000 was also recorded that same day.

On July 8, 1982, Geiger executed a grant deed transferring the property to GTB Properties (GTB). However, *that document was not recorded until July 1, 1983,* almost a year later. Meanwhile, on August 3, 1982, GTB executed a deed of trust for $51,888.49 in favor of McLaughlin ("GTB deed of trust") and *on August 10, 1982, this document was recorded.*

On July 1, 1983, as part of Escrow No. 2134 at Burbank Escrow, the following three documents were recorded in the following sequential order: (1) a purported "reconveyance" of the GTB deed of trust executed by the Vice President of Burbank Escrow as trustee;[1] (2) the Geiger grant deed to GTB (dated July 8, 1982); and (3) a grant deed conveying the property from GTB to Thomas and Jean Stapleton (Stapleton). On the same date, as part of Escrow No. 2231 at Burbank Escrow a purchase money deed of trust executed by Stapleton in favor of Far West for $105,300, was also recorded.[2] From the $105,300 loan made by Far West, the outstanding first trust deed obligation to Hancock Savings and Loan Association was satisfied.

On February 3, 1984, after Stapleton had failed to make timely payments, Far West recorded a Notice of Default and Election to Sell under Deed of Trust in order to foreclose Stapleton's interest in the Sylmar property. On May 15, 1984, Far West recorded a Notice of Trustee's Sale and, on July 5, 1984, acquired title to the property at a nonjudicial foreclosure sale.

Subsequently, McLaughlin informed Far West of their intention to foreclose under the GTB deed of trust and denied that Far West (1) was a bona

---

[1] For reasons that are not explained in the record, this "reconveyance" was executed by an officer of Burbank Escrow, a "nonparty" to the original deed of trust. Chicago Title Insurance Company was the named trustee and as such was the proper party to execute the reconveyance. As a result, such "reconveyance" was a nullity.

[2] Although the complaint refers to only one escrow it is clear there were two. At oral argument, counsel stated that two separate escrows were opened, No. 2134 and No. 2231. They closed concurrently on July 1, 1983. It was in escrow No. 2231 that Far West's purchase money loan to Stapleton was processed and it was through that escrow that the deed of trust in favor of Far West was recorded. This is supported by the exhibits to Julia Greenfield's declaration.

fide encumbrancer for value or (2) had subsequently taken title as a bona fide purchaser for value.

## PROCEDURAL BACKGROUND

On April 9, 1985, Far West filed a complaint for declaratory relief seeking a declaration that its interest in the property was unencumbered by any claim or right of McLaughlin. Far West denies the priority of the GTB deed of trust on several grounds: (1) it "is a 'wild' Deed of Trust which does not appear within the chain of title , . . ." and that accordingly, Far West cannot be charged with constructive notice thereof; (2) Far West "did not have actual knowledge of [McLaughlin's] claim to the subject property"; and (3) even if the GTB deed of trust is determined to give rise to a claim by McLaughlin, prior in time to the right of Far West, Far West's interest in the property is "necessarily senior" to that of McLaughlin since Far West has a purchase money interest which was used to retire another purchase money interest which clearly *was* senior to the GTB deed of trust.

McLaughlin filed an answer, admitting a controversy exists among the parties but *denying* that Far West did not have actual or constructive notice or knowledge of McLaughlin's claim against the property at the time it obtained its purchase money lien. McLaughlin alleged that Far West's right was junior to theirs.

On December 2, 1985, Far West filed a motion for summary judgment and on July 21, 1986, the motion was granted on the ground that "[t]his matter turns on a 'wild deed' of which moving party has no constructive notice. Responding party has presented no evidence moving party had actual notice of 'wild deed.' No constructive notice by virtue of date of execution of deed. Purpose of recordation is to avoid this situation to determine who owns property at any particular time."[3]

A judgment was entered on November 18, 1986. Subsequently, on December 10, 1986, McLaughlin served a request for production and inspection of documents upon Far West and on December 24, 1986, a civil subpoena duces tecum re deposition directed to Far West was filed. On January 23, 1987, Far West's motion to quash the subpoena duces tecum was granted in that "they were not properly served, the right to conduct discovery is terminated (Rule 333, Rules of Court) and the subpoenas are not supported by a proper under oath showing of good cause and materiality. . . ." This appeal followed.

---

[3] The trial court also stated in its minute order that ". . . Responding party has filed opposition which is both untimely, per 6/30 court order, and deficient. There is no separate Statement of Disputed Facts as required by CCP § 437c, although responding party has requested and been given three continuances. . . ."

## CONTENTIONS ON APPEAL

McLaughlin contends that (1) Far West took with constructive notice of the GTB deed of trust, (2) Far West has "tacitly admitted having actual notice" of the GTB deed of trust, (3) in recording the loan documents, Burbank Escrow was acting as the agent of Far West, and Far West is thus chargeable with the knowledge of such agent and (4) pending ruling on the motion for new trial or ruling on appeal, McLaughlin's discovery efforts were proper.[4]

## DISCUSSION

■ Summary judgment may be properly granted when the evidence in support of the moving party establishes that there is no issue of fact to be tried (Code Civ. Proc., § 437c, subd. (c); see *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653]), and on appeal, this court is limited to the facts shown by the affidavits and may determine only whether the facts so shown give rise to a triable issue. (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d at p. 134; *Dudum* v. *City of San Mateo* (1959) 167 Cal.App.2d 593, 598 [334 P.2d 968].)

In support of the motion for summary judgment, Julia Greenfield filed a declaration stating that "[a]fter receiving the Residential Loan Application [of Stapleton], Far West commenced its investigation and analysis of the Application in a commercially reasonable manner, including, but not limited to, the following acts: . . . E. A title search was conducted to identify any encumbrances or liens duly recorded within the property's chain of title. The information received was duly reviewed and analyzed. . . . At no time prior to the close of escrow, did FAR WEST have notice or knowledge of any valid and enforceable deed of trust, in favor of [McLaughlin], duly recorded within the property's chain of title. . . ."

Wendy Watanabe, Far West's attorney, presented her own declaration to which were attached certain exhibits, one of which was the policy of title insurance obtained to insure Far West's interest pursuant to the deed of trust executed by Stapleton. As stated by Watanabe, this title insurance policy was "based upon a search of the grantor and grantee indices maintained as part of the official records of the County of Los Angeles. The search of the property's chain of title disclosed no valid and enforceable encumbrance or lien, within the subject property's chain of title in favor of

---

[4]On February 5, 1987, McLaughlin's notice of intention to move for a new trial and to vacate judgment was deemed a motion for reconsideration of the summary judgment and judgment (Code Civ. Proc., § 437c). On February 27, 1987, the court found a "lack of jurisdiction" to hear such motion.

[McLaughlin].” *Nothing was filed by McLaughlin in opposition to the motion.*

### 1. The GTB Deed of Trust Was a "Wild" Document Which Was Never in the Chain of Title

■ Proper recordation of a real property instrument is necessary to impart constructive notice of its contents. (Civ. Code, §§ 1213, 1214.)[5] If an instrument cannot be located by searching the "grantor" and "grantee" indices of the public records, the instrument does not constitute constructive notice and later bona fide purchasers or encumbrances are not charged with knowledge of its existence. (See *Stafford* v. *Ballinger* (1962) 199 Cal.App.2d 289, 297 [18 Cal.Rptr. 568].)

The GTB deed of trust was recorded *before GTB obtained record title.* Therefore, it must be termed a "wild" document, i.e., one recorded outside the chain of title. As such, a search of the grantor/grantee indices could not have disclosed its existence. "One who is not connected by any conveyance whatever with the record title to a piece of property and makes a conveyance thereof, does not thereby create any defect in the record title of another when such title is deducible by intermediate effective conveyances from the original owners to that other . . . . Such a deed would not even be constructive notice." (*Bothin* v. *The California Title Ins. Co.* (1908) 153 Cal. 718, 723 [96 P. 500]; see also *Duncan* v. *Ledig* (1949) 90 Cal.App.2d 7, 12 [202 P.2d 107].)

■ This same rule applies to a conveyance by a person who is in the chain of title, but who makes a conveyance *prior to his acquisition of record title.* His conveyance, at the time it is made, is that of a stranger to the title; and, although he afterwards gains record title and makes another conveyance, the second grantee is not bound, in his search of the record, to determine whether his grantor, or any grantor in the chain, made a conveyance *before such grantor became a part of the chain.* (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 204, p. 408.) The second grantee who purchases for value and records first will prevail by virtue of the terms of the recording statute (see fn. 5, *infra*). He has no constructive notice of the deed to the first grantee, for the record of such deed, made before the

---

[5] Civil Code section 1213 provides in pertinent part: "Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees; . . ."

Civil Code section 1214 provides: "Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action."

grantor had title, *is not in the chain of title.* For the first grantee to prevail he would have to have recorded his deed *again* (1) *after* record title had come to his grantor and (2) *before* the second grantee had given value. (See, 4 Witkin, *supra,* § 213, p. 418.)

McLaughlin did not later record again after GTB acquired record title; therefore, the GTB deed of trust remained outside the chain of title. Contrary to McLaughlin's argument, the later recordation, on July 1, 1983, of the July 8, 1982, Geiger grant deed to GTB did not bring the GTB deed of trust into the chain of title. (See *Ludy* v. *Zumwalt* (1927) 85 Cal.App. 119 [259 P. 52].)[6] To accomplish that, McLaughlin would have had to record the GTB deed of trust again, *after the grant deed to GTB had been recorded, and before Far West gave value.* This, of course, did not happen. Nor did the earlier date of the Geiger deed to GTB impart a duty to search beyond the chain of title. "Priorities, and the title examination, are determined by the date of *recording* and not the date of *execution.* " (2 Miller & Starr, Current Law of Cal. Real Estate (1987 supp.) § 11:20, p. 24.)

## 2. *Knowledge of the Escrow Was Not Imputable to Far West*

■  McLaughlin argues that in recording the loan documents Burbank Escrow was an agent of Far West and that Far West was thus "chargeable with the knowledge of its agent." However, from the record it appears that Burbank Escrow was Far West's agent only as to Escrow No. 2231 in which the deed of trust to Far West was deposited and through which it was recorded. The other documents, including the void reconveyance, were in Escrow No. 2134 and this involved only GTB, as the seller, and Stapleton as the buyer. Nothing indicates that Far West was a principal in this escrow and, under these circumstances, any knowledge Burbank Escrow might have had of McLaughlin's purported interest is not imputable to Far West.

As the court noted in *La Mancha Dev. Corp.* v. *Sheegog* (1978) 78 Cal.App.3d 9, 15-16 [144 Cal.Rptr. 59], " 'It is true that in *Early* v. *Owens* [1930] 109 Cal.App. 489 [293 Pac. 136], the court held that an escrow holder was the agent of both parties to the escrow, and that knowledge of the agent was imputed to the principals. The case seems to be predicated on the assumption that all parties to an escrow have the legal right to examine all the papers deposited in the escrow. But, at most, the rule of that case

---

[6] In *Ludy* v. *Zumwalt,* plaintiff gave Zumwalt an option to purchase her land. Zumwalt contracted with a water company to irrigate it, the contract giving the water company a prior lien on the land for charges. This lien was recorded. Later, Zumwalt exercised his option and plaintiff conveyed to him, taking a note and purchase money mortgage for the price. Zumwalt defaulted in both payment of the water charges and the note, and the water company claimed its prior lien upon the land. The court held that the record of the prior lien was not notice to plaintiff because, at the time it was recorded, Zumwalt had no title and an encumbrance given by him was outside the chain.

simply means that all parties to an escrow are chargeable with notice of the papers in that escrow. *When there are two escrows, the doctrine of imputed knowledge has no application to documents deposited in the escrow to which the party sought to be charged with notice was not a participant.'*" (See also *Majewsky* v. *Empire Constr. Co., Ltd.* (1970) 2 Cal.3d 478, 483-484, fn. 8 [85 Cal.Rptr. 819, 467 P.2d 547].)

As McLaughlin argues, the void reconveyance, and the fact that it was apparently deemed necessary to even prepare and record it, are clearly suspicious circumstances. However, we have no reason to assume Far West had any knowledge of such matters. Nothing in the record indicates that this in any way came to Far West's attention. We cannot speculate as to what might have been revealed had more extensive discovery been conducted by McLaughlin's counsel or had proper opposition to the motion for summary judgment been filed.

■ Finally, from the record before us, no evidence was presented showing that Far West had any actual knowledge of McLaughlin's deed of trust. Contrary to McLaughin's argument, there is nothing in the record showing that Far West "tacitly admitted having actual notice." In fact, an examination of the affidavits shows outright denial of any knowledge whatsoever. Since McLaughlin has failed to raise any triable issue of fact the court properly granted Far West's motion for summary judgment.[7]

## DISPOSITION

The judgment of dismissal is affirmed. Far West shall recover its costs.

Klein, P. J., and Danielson, J., concurred.

A petition for a rehearing was denied June 9, 1988, and appellants' petition for review by the Supreme Court was denied July 27, 1988.

---

[7]McLaughlin argues further that their efforts at discovery more than five months after the motion for summary judgment was granted should not have been foreclosed. In view of our determination that the summary judgment was properly granted, this contention is without merit. Finally, in view of our conclusion regarding Far West's lack of actual or constructive notice of the GTB deed of trust, we do not reach or make any comments on the merits of Far West's third argument regarding a claim of "purchase money" priority even in the face of such notice.