Filed 4/14/26  Weiser v. Bronstein CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RACHEL WEISER and ISRAEL BRONSTEIN, as trustees, etc.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>IDA FINKELSTEIN BRONSTEIN,<br><br>    Defendant and Appellant. | B338418<br><br>(Los Angeles County Super. Ct. No. 19STPB08650) |

APPEAL from an order of the Superior Court of Los Angeles County, Gus T. May, Judge.  Affirmed.

Steiner & Libo, Leonard Steiner, for Defendant and Appellant.

Lagerlof, Christopher M. Lenz, Nicholas G. Everett, and Matthew J. Pero for Plaintiffs and Respondents.

# I.    INTRODUCTION

Defendant Ida Finkelstein Bronstein appeals from the trial court's order granting plaintiffs'[1] Probate Code section 850 petition, in part, and confirming trust ownership of a residence in Los Angeles (the property).  She also appeals from the court's subsequent order denying her motion to set aside the order after hearing or, in the alternative, for a new trial.  We affirm.

# II.    FACTUAL BACKGROUND[2]

A.    *The Trust*

On June 4, 1999, plaintiffs' parents, Sam and Molly Bronstein,[3] established the trust as settlors and co-trustees and transferred the property, which was their residence, into the trust as an asset.  Molly died on October 31, 2002.  Thereafter, Sam married Ida.

---

[1]    Plaintiffs are Rachel Weiser and Israel Bronstein, children of decedents Sam and Molly Bronstein, and co-trustees and beneficiaries of the Sam and Molly Bronstein Trust dated June 4, 1999 (the trust).

[2]    In this appeal from a judgment following a bench trial, we "'view all of the evidence in the light most favorable to the judgment, drawing every reasonable inference and resolving every conflict to . . . support the judgment.'" (*Adhav v. Midway Rent A Car, Inc.* (2019) 37 Cal.App.5th 954, 969.)

[3]    Because Sam, Molly, Israel, and Ida Bronstein share the same last name, we will refer to them by their first names.

B.     *The Quitclaim Deed*

On May 28, 2004, Sam executed a quitclaim deed transferring his interest in the property to himself and Ida as "joint tenants."  On May 13, 2009, Sam recorded the deed.

C.     *The Life Estate*

On January 5, 2012, Sam executed a "Second Amended Bronstein Revocable Trust," which recited that Molly was "deceased as of October 31, 2002" and Sam remained as sole trustee of the trust.[4]  The document amended the trust to grant Ida, identified as Sam's present wife, a life estate in the property as well as other assets unrelated to the property.

D.     *The Settlement Agreement*

Sam died on January 22, 2013.  In March 2013, the parties executed a settlement agreement,[5] which identified Ida as Sam's widow and plaintiffs as co-trustees of the trust.  According to the document recitals, "disputes ha[d] arisen among and between Ida [and plaintiffs] relating to the assets in which Sam had an ownership interest during his life . . . [and]  [¶]  . . . the Parties wish[ed] to settle, once and forever, all their disputes."  The

---

[4]     The document references the "First Amended Bronstein Revocable Trust" dated December 5, 2005, but it is not part of the record on appeal.

[5]     Ida was represented by attorney Leslie Klein and plaintiffs were represented by attorney Shalom Kev Katz.

3

agreement provided that the property "shall be available for Ida to live in, rent free, for so long as" she maintained it as her primary residence, remained unmarried, and did not "rent out the [h]ome to anyone or take in a tenant." Property taxes, insurance premiums, and major repairs would be paid by the plaintiffs "in their capacities as [c]o-[t]rustees of the [t]rust, which owns [the property]." In paragraph D of the agreement, "[t]he [p]arties agree[d] to execute such other and further instruments, documents and instructions as may be necessary or convenient to carry out the terms, conditions and purposes of [the a]greement."

E.     *Plaintiffs' Requests for a Quitclaim Deed*

On April 3, 2013, about a week after plaintiffs executed the settlement agreement, they—through attorney Katz—made the first of several email requests through Ida's counsel, attorney Klein, that Ida sign a corrective quitclaim deed disclaiming any interest in title to the property.[6] Attorney Klein ignored the emails. On June 3, 2013, attorney Katz sent an email to attorney Klein informing him that he learned from another source that "Ida doesn't want to sign the deed." On June 4, 2013, attorney Katz sent an email to attorney Klein with the subject line: "Any idea when Ida will sign the deed?" and no other text. On June 26, 2013, attorney Katz sent an email to attorney Klein stating, "We have been very patient with your client. [¶] Time has passed without any response. [¶] So, [plaintiffs] are strongly

---

[6]     At trial, the parties stipulated to the authenticity of emails exchanged by attorney Katz, on behalf of plaintiffs, and attorney Klein.

4

considering filing a [quiet] title action against her. . . . [¶] . . . [W]hy won't she sign the deed? Is it because she thinks that later on she can leave (while alive) and then sue [plaintiffs]? What other reason would she have. [¶] The sole purpose of the deed is to avoid a law suit [*sic*] at a later time."

Five years later, on July 19, 2018, attorney Katz sent an email to attorney Klein, stating, "[L]et me know if [Ida] will finally sign a deed." On August 14, 2018, attorney Klein informed attorney Katz, "I called Ida. She is not signing the document." Attorney Katz asked, "I was curious, did you explain that the reason we need the deed signed is to remove a 'cloud on title'?" Attorney Klein replied, "No." Attorney Katz wrote, "Could you have please? If she won't sign it then [plaintiffs] may get a different lawyer to pursue a quiet title action . . . ." The following day, attorney Klein responded, "She says when she dies [plaintiffs] will get the house." To which, attorney Katz replied, "But we need her to sign the deed to make sure it does, don't we?"

## III.    PROCEDURAL BACKGROUND

### A.    *Probate Code Section 850 Petition*

On September 12, 2019, plaintiffs filed a petition under Probate Code section 850, subdivision (a), to request an order and judgment establishing the trust's ownership of the property on the basis that "the trustee . . . holds title to, real . . . property, and the property, or some interest, is claimed to belong to another." (Prob. Code, § 850, subd. (a)(3)(A).) Plaintiffs requested an order (1) declaring the property is an asset of the trust and (2) directing [Ida] to "prepare, execute and deliver to [plaintiffs] any and all

5

documents necessary to provide [plaintiffs] with clear title to the [p]roperty . . . ." The petition included a verification, under penalty of perjury, stating that plaintiffs were "the acting [c]o-[t]rustees of the [trust] . . . ." The petition attached the trust instrument as an exhibit. The trust expressly listed the property as trust property.

On January 13, 2020, Ida filed an objection asserting that she owned the property by operation of the 2004 quitclaim deed. On May 11, 2023, Ida amended her objection to add a statute of limitations defense.

B.    *Joint Trial Statement*

Prior to trial, the parties filed a joint trial statement. They listed the following to be the issues contested at trial: (1) whether plaintiffs met their burden to show that the settlement agreement confirmed the trust held a 100% fee simple interest in the property; (2) whether plaintiffs' claims are barred by the applicable statute of limitations; (3) whether the parties in fact entered into the settlement agreement; (4) whether the settlement agreement was entered into as a result of a mistake of fact; and (5) whether there was consideration to Ida for entering into the settlement agreement.

On the statute of limitations defense,[7] Ida argued that the cause of action accrued in 2013 when plaintiffs made several demands that she transfer her interest in the property to the trust via quitclaim deed and threatened her with a quiet title

---

[7]    The trial court had previously denied plaintiffs' motion for summary adjudication of the limitations defense finding there was a triable issue of fact as to when the cause of action accrued.

6

action when she failed to comply. Petitioners countered that the cause of action did not accrue until Ida "stated explicitly that she claimed an existing interest in the real property" which "occurred either in 2018, at the earliest, when [Ida] first asserted that she still claimed an interest, or in 2019, at the latest, when [she] objected to the instant petition, thereby pressing her claim and repudiating the settlement agreement in its entirety."

C.    *Trial*

The bench trial commenced on November 30, 2023. The trial court heard testimony from attorney Katz, who testified that he represented plaintiffs during their 2013 dispute with Ida, and that he had negotiated the terms of the settlement agreement with attorney Klein, whom he understood represented Ida.

Ida testified that she signed the settlement agreement on March 20, 2013, at a bank, and that attorney Klein, attorney Katz, and another person were present. Ida added that she did not recall whether she had any communication with attorney Klein before signing the agreement. Ida believed that attorney Klein represented plaintiffs.

Attorney Klein testified that someone in his office drafted the settlement agreement. He also admitted to communicating with attorney Katz and forwarding emails from attorney Katz to Ida. Attorney Klein testified that even though he had not been retained as an attorney by Ida, he drafted the settlement agreement on her behalf. He confirmed that he never represented plaintiffs. He admitted that he signed the settlement agreement on a signature line that identified him as "Attorney for Ida Bronstein."

After the close of evidence, the trial court issued its oral statement of decision.  (Code Civ. Proc., § 632, subd. (b).)  The court stated, as relevant here:

"[Ida] argues that the 2004 quitclaim deed validly transferred title of that real property to settlor Sam . . . and Ida . . . as joint tenants.

"The court finds that [Ida] waived her right to assert this objection when she signed the settlement agreement in 2013. That settlement agreement confirmed that 100 percent of the interest in this real property was transferred to the trust.

"[Ida] argues that the settlement agreement is ambiguous as to whether it resolved the title dispute.  The court is not persuaded.

"As [plaintiffs] point out, in 2004, title to the real property was held by the trust.  Although settlor, Sam . . . , purported to transfer the real property through the 2004 deed, which was later recorded in 2009, Sam . . .  did not own the real property in 2004; rather, the trust did.  Thus, this deed was a wild card deed."[8]

The trial court then found that the settlement agreement was not ambiguous and "confirmed that the house was and is owned by the trust."  The court also expressly found that:  (1) the settlement agreement was not void for lack of consideration; (2) Ida was estopped from asserting that the agreement was void for a mistake of fact; and (3) Ida was represented by attorney Klein during the negotiations resulting in the settlement agreement.

---

[8]     A "wild" deed is one that is "recorded outside the chain of title."  (*Far West Savings & Loan Assn. v. McLaughlin* (1988) 201 Cal.App.3d 67, 73.)

Finally, the trial court ruled on the statute of limitations defense: "The court finds that the settlement agreement resolved the dispute regarding title such that signing the requested deed was a mere administrative task. [¶] The triggering event for the statute of limitations was [Ida's] January 13, 2020, objection to the [Probate Code section] 850 petition, which argued that the settlement agreement should be given no effect when analyzing the . . . petition because the trust did not own the real property. For that, see [*Salazar v. Thomas* (2015) 236 Cal.App.4th 467 (*Salazar*)]."

The trial court concluded: "[B]ecause [plaintiffs] have met their burden and [Ida] has not met the burden in response, the court grants the [Probate Code section] 850 petition insofar as it seeks confirmation that title to the real property . . . is owned by the trust. [¶] The court denies without prejudice as moot the requests for relief that Ida . . . prepare, execute, and deliver to [plaintiffs] any and all documents necessary to provide [plaintiffs] with clear title to the property."

D.    *The Motion to Set Aside the Order After Hearing*

On February 2, 2024, Ida moved to set aside the order after hearing or, in the alternative, for a new trial on the grounds that (1) there was insufficient evidence to support the decision because, among other things, there was "no testimonial or documentary evidence . . . to establish that [plaintiffs] were in fact trustees or successor trustees of the [t]rust"; and (2) the trial court erred by concluding that the 2004 quitclaim deed was an invalid "wild card deed" that caused it to erroneously reject Ida's defenses based on flawed reasoning that she never had an

9

interest in the property aside from the life estate granted by the trust.

On February 13, 2024, plaintiffs opposed the motion. They argued that they had demonstrated they were the trustees of the trust and that Ida had never challenged the validity of the trust or their status as trustees. They conceded that the 2004 quitclaim deed was not wild but maintained that the trial court's reference to the "wild card deed" was dicta and irrelevant to its ruling.

On March 20, 2024, the trial court denied the motion to set aside the order after hearing. The court recognized the error it made regarding the 2004 quitclaim deed and that it was not in fact a "wild card deed"; but it explained "that fact does not impact the court's ultimate decision that there was a dispute about the 2004 quitclaim deed and the settlement agreement was reached in response to that dispute and to resolve that dispute. [¶] So yes, there is an error, but it's not an error that made a difference in the ultimate order." In rejecting Ida's contention that plaintiffs had failed to demonstrate they were trustees of the trust, the court noted that their status "didn't appear to be an issue at all, particularly given the settlement agreement—which is the large basis for granting the [Probate Code section] 850 [petition]—was signed by them as trustees."

Ida timely appealed from both the order entered on December 11, 2023, and the minute order entered on March 20, 2024, which denied her motion to set aside the order after hearing.

10

# IV. DISCUSSION

Ida contends that the judgment is not supported by substantial evidence that the plaintiffs were trustees of the trust or that the property was an asset of the trust. She also contends that the petition should have been dismissed as barred by the statute of limitations. Finally, she asserts that the trial court's purported "secret undisclosed ruling" (capitalization and boldface omitted) that the 2004 quitclaim deed was a "wild card deed" prevented her from having a fair trial.

## A. *Sufficiency of the Evidence*

According to Ida, the evidence was insufficient to support the judgment because plaintiffs offered no evidence at trial that they were the trustees of the trust with standing to prosecute the action. Further, she argues, the evidence failed to establish that the trust existed or held title to the property. We disagree.

### 1. Standard of Review

"In general, in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]' (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358.)" (*Estate of Young* (2008) 160 Cal.App.4th 62, 75–76 (*Young*).) We look at the entire record on appeal for evidence. (*Id*. at p. 76.) We are bound by the trial court's credibility determinations, may not reweigh evidence, and

11

liberally construe findings of fact to support the judgment. (*Ibid*.)
Substantial evidence may consist of inferences, so long as they
are a ""product of logic and reason" and "rest on the evidence.""
(*Ibid*., quoting *Kuhn v. Department of General Services* (1994) 22
Cal.App.4th 1627, 1633.)

    2.    <u>Legal Principles</u>

Code of Civil Procedure section 367 requires that "[e]very
action must be prosecuted in the name of the real party in
interest, except as otherwise provided by statute." "When a cause
of action is prosecuted on behalf of an express trust, the trustee is
the real party in interest." (*Wolf v. Mitchell* (1999) 76
Cal.App.4th 1030, 1036; see also Code Civ. Proc., § 369, subd. (a).)

    3.    <u>Analysis</u>

At trial, the parties stipulated to the authenticity and
admissibility of the settlement agreement and the trial court
admitted it as trial exhibit 4 without objection. The court also
admitted the second amended trust as trial exhibit 36 without
objection. The court relied on the agreement—which identified
the trust, Ida as widow and beneficiary, and plaintiffs as Sam's
children[9] and co-trustees—as evidence that the trust existed and
plaintiffs were co-trustees. (See Evid. Code, § 622 ["The facts
recited in a written instrument are conclusively presumed to be
true as between the parties thereto, or their successors in interest

---

[9]    Petitioners' status as children also makes them interested
persons with standing to file a petition under Probate Code
section 850. (Prob. Code, §§ 48, subd. (a)(1), 850, subd. (a)(3).)

12

. . ."].)  The court further relied on the language in the agreement referencing "the [t]rust, which owns [the property]" as conclusive evidence that "100 percent of the interest in this real property was transferred to the trust."  The court's findings, which were based on reasonable inferences from authenticated documents, the admissibility of which was not challenged at trial, is supported by substantial evidence.[10]  We find no error.

## B. *Statute of Limitations*

Ida next contends that the trial court erred when it found the petition was not time-barred by the statute of limitations. According to Ida, the four-year statute of limitations applicable to breach of contract actions (Code of Civ. Proc., § 337, subd. (a)) applied to the petition, and that statute began to run in 2013[11]

---

[10]   We note that the trust instrument was attached as an exhibit to the petition and the parties never disputed plaintiffs were the trustees or that the property was an asset of the trust. Against this record, Ida's decision to wait until a motion for new trial to challenge the failure to introduce an uncontested trust document as evidence at trial appears to be an "attempt at a 'gotcha!'" that should not be rewarded on appeal.  (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 645.)  In any event, for the reasons discussed above, there was substantial evidence to demonstrate that plaintiffs were trustees and that the property was a trust asset.

[11]   Ida contends that "at the very least the [s]ettlement [a]greement was breached by Ida on August 14, 2013," when Ida "unequivocal[ly] refus[ed]" to sign the quitclaim deed.  Attorney Klein sent attorney Katz an email stating that Ida "is not signing the document" on August 14, 2018.

when Ida failed to execute the corrective quitclaim despite plaintiffs' repeated requests.

1. Standard of Review

The determination of which statute of limitations governs a cause of action is a question of law that we review de novo. (*Wang v. Nesse* (2022) 81 Cal.App.5th 428, 438.) And, the application of the governing statute to undisputed facts is also a purely legal question. (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.) If the trial court resolved conflicts in the evidence, whether by express or implied findings, the substantial evidence standard applies. (*Shenefield v. Kovtun* (2024) 106 Cal.App.5th 925, 933–934.)

2. Legal Principles and Analysis

"Generally speaking, the claim underlying a [Probate Code] section 850 petition in probate is subject to the same statute of limitations that would apply had an ordinary civil suit been brought." (*Estate of Yool* (2007) 151 Cal.App.4th 867, 874, fn. 5; accord, *Young, supra*, 160 Cal.App.4th at p. 76.) To determine the relevant statute of limitations to apply, we must first "identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22–23 (*Hensler*); see also *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 172.) It is the "'nature of the right sued upon and not the form of action nor the relief demanded [that] determines the applicability of the statute of limitations under our code.'" (*Hensler, supra*, 8 Cal.4th at

14

p. 23.)  We also consider the purpose of the petition.  (*Young*, *supra*, 160 Cal.App.4th at p. 77.)

Here, the petition sought "an order determining that real property is owned in its entirety by a trust," specifically, an order declaring that "all right, title, and interest in and to [the property] is an asset of [the trust], to be held, administered and distributed by [plaintiffs], as [t]rustees, under the terms of said [t]rust."  Accordingly, the gravamen of the cause of action asserted in the petition was quiet title.

"[T]here is no statute of limitations governing quiet title actions as such, [so] it is ordinarily necessary to refer to the underlying theory of relief to determine which statute applies." (*Muktarian v. Barmby* (1965) 63 Cal.2d 558, 560 (*Muktarian*).) The statute of limitations, however, is tolled while the plaintiff who seeks to quiet title is in "possession of the property."  (*Ibid*.) The court in *Muktarian* explained the rationale for the tolling rule:  "In many instances one in possession would not know of dormant adverse claims of persons not in possession.  [Citation.] Moreover, even if, as here, the party in possession knows of such a potential claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him.  [Citation.]  Of course, the party in possession runs the risk that the doctrine of laches will bar his action to quiet title if his delay in bringing action has prejudiced the claimant. [Citations.]"  (*Id*. at pp. 560–561.)  Even where a plaintiff voluntarily shares possession of the property with a tenant, the statute of limitations is tolled if the tenant "never assert[s] an adverse claim that disturbed plaintiff's possession or threatened his claim to superior title." (*Reuter v. Macal* (2020) 57 Cal.App.5th 571, 580.)

15

Here, pursuant to the terms of the settlement agreement, Ida agreed that the trust held an ownership interest in the property while she held a tenancy interest.  Moreover, after she signed the settlement agreement, Ida did not assert an adverse claim that disturbed the trust's possession of the property or threatened its claim to superior title.  Although she refused to execute the quiet title deed on August 15, 2018, she simultaneously confirmed that "when she dies [plaintiffs] will get the house."

On this record, the trial court's finding that the statute of limitations was tolled until Ida objected to the petition is supported by substantial evidence.  (See *Salazar*, *supra*, 236 Cal.App.4th at p. 478, quoting *Secret Valley Land Co. v. Perry* (1921) 187 Cal. 420, 426–427 [the statute of limitations in a quiet title action does not begin to run "'until the hostile claim is asserted in some manner to jeopardize the superior title.  So long as the adverse claim lies dormant and inactive the owner of the superior title may not be incommoded by it and has the privilege of allowing it to stand indefinitely'"].)

C.     *Error in Describing Quitclaim Deed as a "Wild Card Deed"*

Finally, we consider Ida's contention that the trial court's purported "undisclosed ruling" that the 2004 quitclaim deed was a "wild card deed" prevented her from having a fair trial.

As we explain above, the trial court, in its oral statement of decision, described the 2004 quitclaim deed as a "wild card deed." It also acknowledged its error on March 20, 2024, and expressly found that the quitclaim deed was not a "wild card deed."  It noted, however, that Ida was not prejudiced by the error because

16

the court's earlier description of the deed did not affect the judgment.  Because we agree that Ida was not prejudiced by the court's conceded error, we reject Ida's contention on appeal.  (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 [California Constitution "'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial'"].)

## V.    DISPOSITION

The judgment is affirmed.  Plaintiffs are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

KUMAR, J.[*]

---

[*]    Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.